**UNITED STATES of America,
Plaintiff,**

**v.**

**Anthony Antoine HARTWELL
and Darwin Jay Copeland,
Defendants.**

**No. Crim. 99–50057.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 25, 1999.

Charles A. Grossmann, Flint, MI, Federal Defender, Federal Defender Office, Flint, MI, David S. Grant, Flint, MI, for Anthony Antoine Hartwell, defendant.

Daniel D. Bremer, Burton, MI, Federal Defender, Federal Defender Office, Flint, MI, for Darwin Jay Copeland, defendant.

Mark C. Jones, U.S. Atty's Office, Flint, MI, for U.S.

***MEMORANDUM OPINION AND ORDER DENYING DEFENDANT HARTWELL'S MOTION TO SUPPRESS EVIDENCE; DENYING DEFENDANT COPELAND'S MOTION TO SUPPRESS EVIDENCE AND DENYING DEFENDANT COPELAND'S MOTION TO SUPPRESS STATEMENTS***

GADOLA, District Judge.

The instant criminal action arises out of a traffic stop which occurred at approximately 1:45 a.m. on June 30, 1999. Presently before the Court is defendant Anthony Antoine Hartwell's motion to suppress evidence filed August 17, 1999. An evidentiary hearing was commenced regarding defendant Hartwell's motion on September 8, 1999. However, at that time, counsel for

defendant Darwin Jay Copeland informed the Court that defendant Copeland intended to file his own motion to suppress evidence. Accordingly, the evidentiary hearing was continued until October 14, 1999. On October 4, 1999, as promised, defendant Copeland filed a motion to suppress evidence and a motion to suppress statements. The government had responded to defendant Hartwell's motion on August 25, 1999. The government also notified the Court that it would not file a written response to defendant Copeland's motions prior to the October 14, 1999 evidentiary hearing. On October 14, 1999, an evidentiary hearing on both defendants' motions was held. At said hearing, the government sought leave to submit a supplemental brief regarding defendants' motions to suppress. Leave was granted. On October 15, 1999, the government filed its supplemental brief.

Both defendants Hartwell and Copeland are charged in Count I of a three-count first superseding indictment filed September 1, 1999. That count charges defendants with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant Hartwell is charged in Count II with being a felon in possession of firearm in violation of 18 U.S.C. § 922(g). Count III charges defendant Copeland with being a felon in possession of firearm in violation of 18 U.S.C. § 922(g).

For the reasons set forth below, both defendants' motions to suppress will be denied. Specifically, the Court is persuaded that the Michigan state troopers who stopped the vehicle had probable cause to believe that at least one *traffic* violation had occurred as required under the applicable caselaw. Moreover, the Court finds no constitutional violations as a result of the subsequent searches of defendants and the vehicle.

## II. FACTUAL BACKGROUND GERMANE TO BOTH DEFENDANTS

At the evidentiary hearing, the government presented Michigan State Troopers Thomas Weber and Michael John Gillette. The defense put forward no witnesses. Significantly, neither the government nor defendants disputed the crucial facts recounted below.

On June 30, 1999, at approximately 1:45 a.m., Troopers Gillett and Weber were on patrol when they observed a vehicle with its parking lights on, parked on the wrong side of the street, i.e. facing on-coming traffic. *See* police report, attached as Exh. 2 to the government's answer and brief in response to motion to suppress. The troopers also noted that the vehicle was partially blocking the roadway as it was parked at an almost 45 degree angle to the curb on its left side of the roadway. *See id.*, p. 1. The troopers passed by the parked vehicle and decided to circle the block in order to return to investigate the situation. By the time they had returned, however, the suspect car had pulled away from the curb. The troopers followed and ultimately stopped the vehicle approximately three-fourths to one mile away.

Once stopped, the troopers approached the vehicle and observed that it was occupied by two males, later determined to be defendant Anthony Hartwell, the driver, and co-defendant Darwin J. Copeland, the passenger. As Trooper Gillett approached the passenger side of defendant's car, he observed a plastic cup which was approximately ¾ full of a suspected alcoholic beverage. Also observed was one bottle of suspected alcohol that was in a brown paper sack which was leaning into the center console on the driver's side. *See* police report, p. 2. At that time, Trooper Gillett asked the passenger whether the bottle contained alcohol. The trooper was advised by defendant Copeland that it did. *See id.*

According to the police report and the testimony, Trooper Weber asked the driver, defendant Hartwell, to exit the vehicle, and advised him that he was under arrest for transporting open intoxicants in a mo-

tor vehicle. Trooper Weber then placed his left hand on the left hip of defendant Hartwell. The trooper reported that he could feel a handgun in defendant's waistband. Defendant Hartwell was then placed in custody for carrying a concealed weapon. One .40 caliber handgun was seized from defendant's waistband.

Trooper Gillett placed the passenger, co-defendant Copeland, under arrest for possession of open intoxicants in a motor vehicle. At the same time, defendant Copeland advised the troopers that there was another handgun in the vehicle. Trooper Gillette then observed a .25 caliber handgun laying on the back seat passenger-side floorboard of the vehicle.

It should be noted that the troopers were assisted with taking both subjects into custody by Flint Police Department Officer Harlon Green.

As conceded in open court during the hearing October 14, 1999, defendants do not dispute the sequence of events enumerated above. Defendants argue, however, that the stop of defendant's vehicle was "pretextual." Although defendant Hartwell does not deny that he was "improperly parked," his counsel maintains that such an infraction does not constitute a violation of the "traffic laws" and thus the troopers had no probable cause to stop the vehicle.

## III. DEFENDANT HARTWELL'S MOTION TO SUPPRESS EVIDENCE

It is well-settled that an automobile stop is considered a "seizure" of persons pursuant to the Fourth Amendment of the United States Constitution. *See Whren v. U.S.*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]"). The Fourth Amendment protects individuals against "unreasonable" searches and seizures conducted by governmental actors. Accord-

ingly, "[a]n automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810, 116 S.Ct. 1769. As the Supreme Court noted in *Whren,* "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a *traffic violation* has occurred." *Id.* (citing *Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (per curiam)) (emphasis added). The Fourth Amendment is made applicable to the states via the Fourteenth Amendment's due process clause. *See Terry v. Ohio,* 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Defendant argues that the troopers' stop of defendant Hartwell's vehicle was pretextual. Although defendant concedes that a stop of the car would have been permitted if the troopers had observed defendant committing a "traffic offense," defendant maintains that violation of a *parking* regulation is an insufficient basis for the stop. Defendant Hartwell cites a number of cases in an attempt to distinguish the instant situation from other cases clearly involving moving traffic violations. *See, e.g., Whren v. U.S., supra* (inattentive operation of vehicle, improper turn and speeding); *People v. Haney,* 192 Mich.App. 207, 480 N.W.2d 322 (Mich.Ct. App.1991) (failure to signal a left turn); *U.S. v. Trigg,* 878 F.2d 1037 (7th Cir.1989) (surveillance of a known drug courier vehicle); *U.S. v. Ferguson,* 8 F.3d 385 (6th Cir.1993) (no visible license plates); *U.S. v. Pino,* 855 F.2d 357 (6th Cir.1988) (illegal lane change); *U.S. v. Crotinger,* 928 F.2d 203 (6th Cir.1991) (speeding); and *U.S. v. French,* 974 F.2d 687 (6th Cir.1992) (speeding). Finally, defendant Hartwell brings a claim of racial discrimination under the Equal Protection Clause alleging that the officers stopped defendant's vehicle because defendant and his passenger

were young black males, driving a new car in the early morning hours.

The government, in response, maintains that the stop was not pretextual. The government's position (at least as stated in its initial response) hinges upon the allegation that defendant was illegally parked in violation of M.C.L. § 257.675.[1] According to the government, the illegal parking represented a violation of a "traffic law" which allowed the troopers to permissibly stop the vehicle. Once the vehicle was stopped, the troopers observed open intoxicants inside the car in violation of M.C.L. § 257.624(a).[2] The government directs the Court's attention to *U.S. v. Ferguson*, 8 F.3d 385 (6th Cir.1993), for the proposition that a violation of a state traffic ordinance provides probable cause for a motor vehicle stop, and that such a stop cannot be successfully challenged in spite of the existence of other subjective motivations for the stop. *Id.* at 392.

The *first and threshold issue* is whether the troopers violated the Fourth Amendment prohibition against unreasonable searches and seizures by stopping defendant's vehicle. The crucial question is whether by seeing defendant's automobile parked illegally—the wrong direction to the curb with the rear end of the vehicle partially blocking the roadway—the troopers had *probable cause* to believe that a traffic violation had occurred. If so, then the troopers' subsequent stop of defendant's car was permissible under *Whren* and *Ferguson*. As the Supreme Court stated in *Whren*, the constitutional reasonableness of traffic stops does *not* depend on the "actual motivations" of the individu-al officers involved. *See* 517 U.S. at 813, 116 S.Ct. 1769.

The second issue which also must be addressed is whether the Equal Protection Clause was violated by the officers' alleged "selective enforcement" of the traffic laws against defendant *because of* his race. This is a separate and distinct issue from the Fourth Amendment inquiry. The Sixth Circuit in *U.S. v. Akram*, 165 F.3d 452 (6th Cir.1999), recently held that

> [a] traffic violation provides a justification under the Fourth Amendment for a stop, and the stop is deemed valid, regardless of the motive, *unless* the motorist can demonstrate that the police have violated some other provision of the Constitution, such as the Equal Protection Clause.

*Akram*, 165 F.3d at 455 (emphasis added). In addition, Justice Scalia in *Whren v. U.S.*, *supra*, acknowledged that

> [w]e of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. *But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.* Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

*Whren*, 517 U.S. at 813, 116 S.Ct. 1769 (emphasis added). In the instant case, defendant has raised the selective enforcement issue. As a result, the Court must conduct a separate inquiry into whether the Equal Protection Clause has been violated. Both the Fourth Amendment and

1. Pursuant to Section 257.675,

> ... a vehicle stopped or parked upon a highway or street shall be stopped or parked with the wheels of the vehicle parallel to the roadway and within 12 inches of any curb existing at the right of the vehicle.

M.C.L. § 257.675(1).

2. Section 257.624a provides, in pertinent part, that

> ... a person shall not transport or possess alcoholic liquor in a container that is open or uncapped or upon which the seal is broken within the passenger compartment of a vehicle upon a highway, or within the passenger compartment of a moving vehicle in any place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, in this state.

M.C.L. § 257.624a(1).

Equal Protection arguments will be addressed hereinbelow *seriatim.*

## A. THE FOURTH AMENDMENT ISSUE

Turning now to the Fourth Amendment issue, the Court notes that the probable cause standard in the context of traffic violations has been clearly articulated by the Sixth Circuit in *U.S. v. Ferguson, supra.* In that case, the appellate court set forth the following standard for assessing probable cause:

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). As this Court noted in *United States v. Barrett,* 890 F.2d 855 (6th Cir.1989):

The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). As noted in *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983):

[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. (citations omitted).

Moreover, the existence of probable cause should be determined on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective. *Id.* at 861.

*Ferguson,* 8 F.3d at 392.

At the evidentiary hearing, Trooper Weber confirmed the statements set forth in the police report. Specifically, Weber testified that while on patrol he observed a vehicle parked at close to a 45 degree angle to the curb on the *wrong side* of the street. Trooper Gillette also testified that he saw the illegally parked automobile. The troopers drove past the car in question and then decided to circle around the block in order to investigate further. According to the troopers' testimony, however, after rounding the block the automobile in question had already pulled away from the curb and another vehicle had pulled in behind the target vehicle from an adjoining drive-way.

The troopers are in agreement that no reasonable suspicion existed to believe that criminal activity was afoot. In addition, it is uncontested that after the target vehicle was in motion, the police car trailed behind the two cars for an approximate distance of three-fourths to one mile before stopping the target vehicle. Both troopers testified that defendant Hartwell engaged in no improper traffic maneuvers, driving within the speed limit and stopping completely at a stop sign. After the interposing car had made a turn, the troopers flashed the emergency lights in order to pull over defendant's vehicle. Defendant Hartwell pulled to the curb immediately and without incident.

As stated above, the *threshold* issue before this Court is whether the initial stop of the vehicle in question was permissible under the Fourth Amendment. As mentioned, the government has filed a supplemental brief in which it attempts to counter defendant Hartwell's position that no probable cause existed to believe that a *traffic* violation had occurred to justify the stop. Specifically, the government cites two additional Michigan state laws in addition to M.C.L. § 257.675 (parking viola-

tions). The two further statutes relied upon by the government are M.C.L. § 257.676b (impeding traffic) and M.C.L. § 257.634 (driving on right side of road).

This Court is of the considered opinion that a parking violation, *in and of itself*, would *not* provide a reasonable police officer with probable cause to believe that a person had committed a *traffic* offense. Accordingly, the initial parking violation relied upon by the government did *not* provide the troopers with probable cause to stop defendant Hartwell's vehicle. *Nevertheless*, the government now urges this Court to consider other additional violations allegedly committed by defendant Hartwell.

■ M.C.L. § 257.676b is entitled, "Interference with flow of traffic," and provides, in pertinent part, that

[a] person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular or pedestrian traffic upon a public street or highway in this state, by means of a barricade, object, or device, or with his

or her person. This section shall not apply to persons maintaining, rearranging, or constructing public utility facilities in or adjacent to a street or highway.

M.C.L. § 257.676b(1). Both troopers testified that the back-end of defendant's vehicle partially blocked the roadway. There was also testimony that defendant's vehicle "obstructed traffic" by its position. As a result, it is apparent that the troopers did have probable cause to believe that defendant Hartwell had "block[ed], obstruct[ed], impede[d], or otherwise interfere[d] with the normal flow of vehicular or pedestrian traffic" as required under M.C.L. § 257.676b(1).

M.C.L. § 257.634 is entitled, "Driving on right side of road," and provides, in pertinent part, as follows: "Upon each roadway of sufficient width, the driver of a vehicle shall drive the vehicle upon the right half of the roadway, ...." M.C.L. § 257.634(1). Several exceptions to the above-stated rule exist but none are applicable in the case at bar.[3] As a consequence, the Court finds

---

**3.** The full text of M.C.L. § 257.634 is as follows:

(1) Upon each roadway of sufficient width, the driver of a vehicle shall drive the vehicle upon the right half of the roadway, except as follows:

(a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing that movement.

(b) When the right half of a roadway is closed to traffic while under construction or repair or when an obstruction exists making it necessary to drive to the left of the center of the highway. A driver who is driving on the left half of a roadway under this subdivision shall yield the right-of-way to an oncoming vehicle traveling in the proper direction upon the unobstructed portion of the roadway.

(c) When a vehicle operated by a state agency or a local authority or an agent of a state agency or local authority is engaged in work on the roadway.

(d) Upon a roadway divided into 3 marked lanes for traffic under the rules applicable on the roadway.

(2) Upon a roadway having 2 or more lanes for travel in 1 direction, the driver of a vehicle shall drive the vehicle in the ex-

treme right-hand lane available for travel except as otherwise provided in this section. However, the driver of a vehicle may drive the vehicle in any lane lawfully available to traffic moving in the same direction of travel when the lanes are occupied by vehicles moving in substantially continuous lanes of traffic and in any lefthand lane lawfully available to traffic moving in the same direction of travel for a reasonable distance before making a left turn.

(3) This section shall not be construed to prohibit a vehicle traveling in the appropriate direction from traveling in any lane of a freeway having 3 or more lanes for travel in the same direction. However, a city, village, township, or county may not enact an ordinance which regulates the same subject matter as any provision of this subsection. The driver of a truck with a gross weight of more than 10,000 pounds, a truck tractor, or a combination of a vehicle and trailer or semitrailer shall drive the vehicle or combination of vehicles only in either of the 2 lanes farthest to the right, except for a reasonable distance when making a left turn or where a special hazard exists that requires the use of an alternative lane for safety reasons.

that the troopers had probable cause to believe that M.C.L. § 257.634 had been violated due to the fact that defendant Hartwell's vehicle was illegally parked on the wrong side of the road, i.e., facing on-coming traffic. This critical fact was not disputed by the defense. By necessity, therefore, defendant had violated the Michigan statute, M.C.L. § 257.634, prohibiting the driver of a vehicle from driving on the wrong side of the roadway. In addition, as confirmed by the testimony of the state troopers, they observed the vehicle in the process of pulling away from its initial position. Inevitably, therefore, the troopers must have seen defendant's vehicle driving on the wrong side of the road.

Even had the troopers not seen defendant driving on the wrong side of the road in violation of M.C.L. § 257.634, it should be noted that the probable cause standard does not require that police officers actually see the defendant committing the traffic infraction. Rather, as mentioned previously, probable cause " 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *Ferguson*, 8 F.3d at 392 (quoting *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. 2317). Viewing the totality of the circumstances, as this Court must under *Illinois v. Gates, supra,* it is apparent that the troopers did have probable cause to believe that defendant Hartwell (1) had violated M.C.L. § 257.676b by partially blocking a public roadway *and* (2) had violated M.C.L. § 257.634 by being on the wrong side of the road and facing on-coming traffic.

The Court must emphasize once again that its holding that probable cause existed is premised on the *additional* statutory authority presented by the government following the evidentiary hearing and *not* upon M.C.L. § 257.675 regarding parking violations. As indicated at the hearing, this Court's own research has revealed no cases wherein a valid traffic stop had been premised on an antecedent parking violation. Accordingly, if the parking violation were the troopers *only* basis for the stop of defendant's vehicle then that stop would have been unconstitutional and an unreasonable seizure under the Fourth Amendment. However, since blocking a roadway and driving on the wrong side of the road are clearly "traffic violations," the Court must deny defendant Hartwell's motion to suppress evidence.

## B. THE EQUAL PROTECTION ISSUE

Although this Court has determined that there was no Fourth Amendment violation and that probable cause did exist to believe that defendant had committed one or more traffic offenses, a further inquiry still must be undertaken. As mentioned above, both the Sixth Circuit and the U.S. Supreme Court have acknowledged that traffic stops are also subject to the constraints placed upon governmental conduct by the Equal Protection Clause. In the context of traffic stops, the Court must determine whether the officers engaged in selective enforcement of the traffic laws based solely upon the race of defendant and his passenger.

■ In *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the Supreme Court held that a finding that particular governmental conduct violates equal protection requires that the particular decisionmaker in question acted with "discriminatory purpose." *Id.* at 279, 99 S.Ct. 2282. The Court stated that

"[d]iscriminatory purpose," however, implies more than intent as volition or intent as awareness of consequences. See *United Jewish Organizations v. Carey,* 430 U.S. 144, 179, 97 S.Ct. 996, 1016, 51 L.Ed.2d 229 (concurring opinion). It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because

(4) A person who violates this section is responsible for a civil infraction.

M.C.L. § 257.634.

of," not merely "in spite of," its adverse effects upon an identifiable group. *Id.* Applying the *Feeney* rule, it must be shown that the troopers stopped defendant's vehicle at least in part "because of" and not merely "in spite of" the race of defendant and his passenger. If such a showing is made, defendant would be entitled to have all evidence uncovered suppressed as a result of the search which arose out of the unconstitutional stop. *See U.S. v. Trigg*, 878 F.2d 1037 (7th Cir.1989); *see also Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ At the hearing, Trooper Weber testified that he did not clearly see the persons in the car at the time it was initially observed on the wrong side of the roadway and partially obstructing the roadway, nor could he tell how many people were in the car prior to the stop. Both troopers testified that they only saw defendant's vehicle at a standstill on the wrong side of the roadway and at approximately a 45 degree angle to the curb for a brief period of time while driving past it. According to Trooper Weber the interval of time in which the troopers viewed the parked automobile was approximately "two seconds." As such, there is no evidence to suggest that the troopers stopped defendant's vehicle "because of" defendant's race in violation of the Equal Protection Clause. From all accounts, the troopers were unaware of the race of the driver and the passenger prior to the stop.

## IV. DEFENDANT COPELAND'S MOTION TO SUPPRESS EVIDENCE

### A. THE STANDING ISSUE

■ At the outset, this Court must first address whether defendant Copeland has standing to challenge the search of the vehicle driven by defendant Hartwell.[4] It is a well-settled general rule that "[a] person who is aggrieved by an illegal search

and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also U.S. v. Carter*, 14 F.3d 1150 (6th Cir.1994) (holding that passenger of van lacked standing to challenge search thereof).

Defendant has cited *United States v. Dunson*, 940 F.2d 989 (6th Cir.1991), for the proposition that a non-driver defendant who had participated in the borrowing of the car in question and who also had personal belongings in the trunk has standing to object to a search of the automobile. In *Dunson*, police officers stopped a vehicle for speeding. A search of the vehicle premised on the signed consent of the driver revealed cocaine. Defendant Dunson was a passenger but was found nevertheless to have standing to contest the search. *See Dunson*, 940 F.2d at 995. The Sixth Circuit relied upon *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), in finding that because both defendants had "common authority" over, and "mutual use" of, the property, both had a "legitimate expectation of privacy" in the automobile sufficient to support standing to challenge the search. *See id.*

Defendant Copeland's counsel argues in the supporting brief that "the police officers claimed that they learned of the gun after questioning Mr. Copeland as to whether there was a second gun in the car." Counsel further maintains that "[defendant Copeland] then allegedly informed [the officers] that the gun was stuffed between the seats ... [defendant] also allegedly claimed a proprietary interest in the gun by saying that he had found it at the Kennedy Center and was carrying it for protection." *See* defendant Copeland's

---

4. The government has proffered the Michigan registration of the stopped vehicle indicating that the same is registered to "Carolyn Denise Jenkins and Jackquelynn D. Jennings." *See*

Exh. 1 to the government's suppl. brief. As a result, there is no question that defendant Copeland had no ownership interest in the vehicle.

brief, p. 5. Defense counsel argues that a "zone of privacy" extended within defendant Copeland's immediate vicinity despite the fact that he was merely a passenger of the vehicle.

In response, the government in its supplemental brief argues that the correct inquiry is not whether defendant had a property interest in the item seized. *See U.S. v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Rather, according to the government, the Court must instead inquire into whether defendant had a "legitimate expectation of privacy" in the area searched. *See Rakas,* 439 U.S. at 143, 99 S.Ct. 421 (holding that "the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"); *see also Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (mere fact that petitioner claimed ownership of certain drugs in purse did not entitle him to challenge search of purse).

In *U.S. v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), defendants were charged with unlawful possession of stolen mail. Defendants argued that since they were charged with crimes of possession, they were "entitled to claim 'automatic standing' to challenge the legality of the search which produced the evidence against them, without regard to whether they had an expectation of privacy in the premises searched." *Id.* at 84, 100 S.Ct. 2547. The Supreme Court soundly rejected defendants' argument, holding as follows:

> [w]hile property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated .... property rights are neither the beginning nor the end of this Court's inquiry. In *Rakas,* this Court held that an illegal search only violates the rights of those who have "a legitimate expectation of

privacy in the invaded place." 439 U.S., at 140, 99 S.Ct., at 430.... We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched .... we must instead engage in a "conscientious effort to apply the Fourth Amendment" by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched....

*Id.* at 91–92, 100 S.Ct. 2547.

Similarly, in *U.S. v. Sangineto–Miranda,* 859 F.2d 1501 (6th Cir.1988), the Sixth Circuit clarified the appropriate test to be applied in determining standing in the Fourth Amendment context. The court held that

> [a] defendant has the burden of establishing his standing to challenge a search or seizure in violation of the fourth amendment [citing *Rakas* ].... The defendant must satisfy a two-part test: (1) whether he manifested a subjective expectation of privacy in the object of the challenged search; and (2) whether society is prepared to recognize that expectation as legitimate. *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986).

*Sangineto–Miranda,* 859 F.2d at 1510. In that case, the court found that defendant who was only a casual visitor, sleeping on the couch in another person's apartment, lacked standing to contest a search of the premises. *Id.* The Sixth Circuit articulated the rule that " '[a] defendant's legitimate presence on the searched premises, without more, is insufficient to establish standing.' " *Id.* (citing *U.S. v. Antone,* 753 F.2d 1301, 1306 (5th Cir.1985)).

Pursuant to the well-established rules set forth in *Rakas, Rawlings, Salvucci,* and *Sangineto–Miranda,* the Court concludes that defendant Copeland, as a passenger in a vehicle driven by defendant Hartwell, lacks standing to challenge the

search of the vehicle and subsequent seizure of the .25 caliber handgun. The *Dunson* case relied upon by defendant is inapposite. There has been no showing that defendant Copeland participated in the borrowing of the car in question. There also has been no showing that Copeland had stored his personal belongings in the trunk of the automobile. Clearly, defendant Copeland has failed to establish that he possessed a legitimate expectation of privacy in the automobile searched. As such, his motion to suppress evidence may be denied based on his lack of standing to contest the search.

## B. THE FOURTH AMENDMENT ISSUE[5]

■■■ Even assuming *arguendo* that defendant Copeland possessed standing to contest the search, the Court finds that no Fourth Amendment violation occurred. Defendant argues that the "plain view" doctrine would *not* be applicable to justify the search of the vehicle. As the Sixth Circuit noted in *U.S. v. Morgan,* 743 F.2d 1158, 1167 (6th Cir.1984), there are three requirements which must be satisfied before the plain view exception to the warrant requirement may be applied:

*First,* the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area.

*Second,* the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain view doctrine only as a pretext.

*Finally,* it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*Id.* (citing *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) and *Coolidge v. New Hampshire,*

403 U.S. 443, 465–70, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) (plurality opinion)) (emphasis added).

In the case at bar, while defendants were still seated inside the automobile, the troopers *both* noticed containers containing suspected alcoholic beverages. Trooper Gillette testified that he saw a plastic cup containing a suspected intoxicant on the floorboard on the passenger side of the vehicle, on the side where defendant Copeland was seated. Trooper Weber testified that he saw a bottle wrapped in plain brown paper partially hidden beneath the legs of the driver, defendant Hartwell. Defendants had not yet been ordered out of the vehicle.

As the Court indicated at the evidentiary hearing and during oral argument, the plain view doctrine clearly was applicable in the present case. Counsel for defendant Copeland attempted to argue that the second prong of the above-stated three-part test had not been met. According to defense counsel, the stop of the vehicle was pretextual and thus the "inadvertence" prong of the plain view test had not been satisfied. However, defense counsel's argument is not supported by the facts. There was no evidence produced showing that the troopers knew in advance (i.e., prior to the stop) the location of any incriminating evidence which was later seized. To the contrary, the troopers both testified to the effect that they did not have any idea who or what would be found in the car. In addition, once the suspected open containers of alcohol were spotted, the troopers were perfectly justified in ordering both defendants out of the car. At that point, each trooper conducted a completely permissible search incident to arrest.

## VI. DEFENDANT COPELAND'S MOTION TO SUPPRESS STATEMENTS

Defendant Copeland has filed an additional motion entitled, "Motion to Suppress

---

**5.** Unlike defendant Hartwell, defendant Copeland does not raise the issue of whether the stop of the vehicle violated the Equal Protection Clause.

Statement." Defendant argues that "[t]he statements taken from Copeland, both at the time of his arrest and at the state police post, were fruit of the poisonous tree because they derived from an illegal search and seizure." *See* motion to suppress statement ¶ 5, p. 2; *see also Wong Sun v. U.S.*, 371 U.S. 471, 485 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (stating that declarations of a co-defendant were to be excluded "if they are held to be 'fruits' of the agents' unlawful action ... this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search.")

Since the Court has already found that there was no Fourth Amendment violation with respect to the initial stop and the subsequent searches, defendant Copeland may not argue for suppression of the statements based upon the alleged illegality of the prior search and seizure. During oral argument, counsel for defendant Copeland raised the additional argument that the statement made by Copeland regarding the gun still in the vehicle should be suppressed because defendant had not yet been read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court will now turn to this issue.

As the troopers testified at the hearing, once Trooper Weber felt a gun on the person of defendant Hartwell during the pat-down search, Weber informed his partner, Trooper Gillette, that he had found the gun. Trooper Gillette then asked defendant Copeland whether he too had a gun. Copeland informed the officer that there was another gun in the car. A search of the vehicle revealed the .25 caliber handgun laying on the backseat floorboard.

*Miranda* requires that suspects be advised of their rights as a procedural safeguard prior to any "custodial interrogation." The Supreme Court defined such interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *See Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. As a result, defendant Copeland clearly was deprived of his freedom when questioned by the trooper. Despite the fact that defendant had not yet been given his *Miranda* warnings, the Court finds that defendant Copeland's statement regarding the location of the gun need not be suppressed.

In *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court recognized the so-called "public safety" exception to the *Miranda* rule. In that case, the defendant was stopped in a supermarket by police on suspicion of rape. *See Quarles*, 467 U.S. at 652, 104 S.Ct. 2626. The police officer ordered the suspect to put his hands over his head. *Id.* Upon frisking the defendant, the officer discovered that defendant was wearing an empty shoulder holster. *Id.* After handcuffing defendant but before advising him of his *Miranda* rights, the officer asked defendant where the gun was located. *Id.* Defendant nodded toward some empty cartons and responded that "the gun is over there." *Id.* The gun was retrieved and the defendant was then formally arrested and advised of his *Miranda* rights. The Supreme Court rejected defendant's argument that his statements regarding the gun should be suppressed, holding that

> there is a "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved.

*Id.* at 655, 104 S.Ct. 2626.

Just as in *Quarles*, Trooper Gillette in the instant case was understandably concerned about the possibility of another gun being found either on the person of defendant Copeland or in the automobile. It would be ludicrous as well as dangerous to

require police officers to provide *Miranda* warnings *before* ascertaining whether any weapons are still within the reach of suspects. Such a rule would place the safety of both police officers and the public in jeopardy. *See Quarles,* 467 U.S. at 656, 104 S.Ct. 2626 (holding that the value of the *Miranda* warning was outweighed by safety concerns in situations "where spontaneity rather than adherence to a police manual is necessarily the order of the day"); *see also U.S. v. Williams,* 181 F.3d 945, 953–54 (8th Cir.1999) (holding that defendant's statement that there was gun in the closet, in response to deputy sheriff's inquiry as to whether there was anything that officers needed to be aware of, was admissible under public-safety exception to the *Miranda* rule because concerns for officers' safety required spontaneous inquiry by officer).[6]

For the reasons stated above, defendant Copeland's motion to suppress statements will be denied.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant Anthony Antoine Hartwell's motion to suppress evidence filed August 17, 1999 is **DENIED;**

**IT IS FURTHER ORDERED** that defendant Darwin Jay Copeland's motion to suppress evidence filed October 4, 1999 is **DENIED;**

**IT IS FURTHER ORDERED** that defendant Darwin Jay Copeland's motion to suppress statements also filed October 4, 1999 is **DENIED;**

**SO ORDERED.**

---

6. The Court need not reach the government's argument that in any event the .25 caliber handgun need not be suppressed because it would have been found anyway at a subsequent inventory search conducted at the police precinct. The Court does note that even assuming *arguendo* the handgun *could be* suppressed based upon a *Miranda* violation, the "inevitable discovery" rule would be applicable to allow admission into evidence of the .25 caliber handgun. *See Nix v. Williams,* 467 U.S. 431, 442, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation").