UNITED STATES of America, Plaintiff,

v.

Gary Michael CICAN, Defendant.

No. Crim. 01–50007.

United States District Court, E.D. Michigan, Southern Division.

July 24, 2001.

Order Denying Reconsideration Aug. 13, 2001.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for plaintiff.

Randall C. Roberts, Ann Arbor, MI, for defendant.

## ORDER

GADOLA, District Judge.

Before the Court is Defendant's motion to suppress evidence [docket entry 11]. The Court held an evidentiary hearing on this matter in open Court on July 16, 2001. For the reasons set forth below, the Court grants Defendant's motion.

## I BACKGROUND

Defendant stands accused of twelve counts of violating 26 U.S.C. § 5861(d) by possessing seven unregistered machine guns and five silencers. Those charges stem from the following events.

According to an affidavit to which Inkster Police Detective Anthony Delgreco swore, at approximately 5:25 p.m. on August 24, 2000, someone made a telephonic bomb threat that was called to a pay telephone located at 26700, Princeton, Inkster, Michigan. The telephone was in the garage area of Carron Industries. According to Detective Delgreco, a Carron Industries employee who answered the call quoted the caller as saying that "a bomb will go off at 6:00."

Based on this information, on August 25 Detective Delgreco obtained a subpoena ordering the telephone company, Ameritech, Incorporated ("Ameritech"), to produce to Detective Delgreco "telephone records showing all calls received at [the telephone in question] between the hours of 5:20 p.m. and 5:30 p.m. on 8/24/00. [sic] and where those originated." Despite the ten-minute window of time for which Detective Delgreco requested records, however, Ameritech actually provided a document that reflected the calls received at the pay phone over a much broader period of time on August 24.

This document indicated that two calls were received. The first call originated from Defendant's home telephone at 1:50 p.m. and lasted for two minutes and thirteen seconds. The second originated from an unknown number at 6:47 p.m. and lasted zero seconds. The Ameritech document also carried a disclaimer stating that "it is not always possible to provide all requested records."

After reviewing the information that Ameritech provided, Detective Delgreco

obtained records from Michigan's Secretary of State. Those records showed that Defendant and Mrs. Cican resided at Defendant's home. Detective Delgreco also verified that Defendant worked for Carron Industries at the time in question.

Seven days after the alleged bomb threat, on August 31, 2000, Detective Delgreco spoke with Defendant. According to the Government, and as shown in the affidavit that Detective Delgreco signed, Defendant stated that on the day of the alleged threat "he had left work about 1530 hours [3:30 p.m.] and arrived at his home at approximately 1700 hours [5:00 p.m.]. From 1700 hours on, [Defendant] was home alone . . . and he made no phone calls." (Pl.Br. at 2.)

Eight days after the alleged bomb threat, on September 1, 2000, Detective Delgreco obtained a search warrant from a state judge. In his supporting affidavit, Detective Delgreco swore that, on the day of the alleged bomb threat, "[a]ccording to Ameritech records, only one call came into [the pay phone] and it was from [Defendant's home telephone], which registers to" Defendant's wife. As the Government admits, this statement erroneously implied[1] that "the call from the Cicans' residence had been made about the time of the

bomb threat." (Pl.Br. at 5.) In fact, the only call from Defendant's home to the pay telephone on August 24 occurred more than three hours before the alleged bomb threat.

In the remainder of the affidavit, Detective Delgreco also explained that a bomb threat had been made at Carron Industries on August 24, 2000, that Detective Delgreco had interviewed Defendant on August 31, and that Defendant had told Detective Delgreco that Defendant was home alone at the time of the alleged bomb threat and had made no telephone calls.

On this basis, the state judge authorized police to search Defendant's house for:

> Any items that could be used to assemble a bomb. Including but not limited to gunpowder, flash powders, fertilizers, pipe materials, igniters, explosives, explosive powders, explosive devices, ingredients, materials and parts used to make a destructive device and any other contraband. Telephone records and any evidence of telephoned bomb threats.

On September 1, 2000, federal and state agents then searched Defendant's house and found the weapons and silencers that gave rise to the charges in this case.[2]

---

**1.** One could just as easily conclude that the affidavit was erroneous not only in its implication, but it its direct meaning. In relevant part, Detective Delgreco swore to the following:

> A. Affiant is a detective with the Inkster City Police Department. Affiant has been so employed for 5 years. On 8/24/00 at approximately 1725 hours [5:25 p.m.] a bomb threat was called into a pay phone at 26700 Princeton, Inkster (Carron Industries). The pay phone number to which the call came into was [ ], which is located in the garage area of Carron Industries. Affiant and other investigators interviewed employee Steve Brown who indicated that the male caller stated "a bomb will go off at 6:00". [sic]

> B. Affiant subpoenaed records from Ameritech to trace all calls that came into that pay phone for the time of the bomb threat. According to the Ameritech records, only one call came into that phone and it was from telephone number [ ], which registers to Roselle Cican at [Defendant's address]. A check of SOS records verified that she resides at [Defendant's address], the location to be searched, along with her husband Gary Michael Cican. Affiant verified that Gary Michael Cican works for Carron Industries.

**2.** Police also found: dozens of lawfully-owned firearms; various publications relating to how one converts a weapon to fire in full automatic; technical manuals relating to various

Defendant faces no charges relating to the alleged bomb threat on August 24, 2000 at Carron Industries.

Defendant now moves to suppress the evidence police found in his home on several grounds. Although Defendant makes divers assertions in his motion, a review of Defendant's brief reveals that his arguments essentially fall into three categories. First, Defendant contends that the warrant was invalidly issued because it was based on false information that Detective Delgreco recklessly provided. Second, he argues that the affidavit underlying the warrant was an impermissible "bare bones" affidavit. Finally, Defendant asserts that the state and federal officers exceeded the scope of authority that the warrant erroneously granted them.

## II LEGAL STANDARD

■ The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A defendant seeking to challenge a search or seizure pursuant to the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *See United States v. Hartwell*, 67 F.Supp.2d 784, 793 (E.D.Mich.1999) (Gadola, J.). Specifically, he must show that (1) he manifested a subjective expectation of privacy in the object of the challenged search and (2) society is prepared to recognize that expectation as legitimate. *Id.* (citations omitted).

■ Once the defendant has established standing in a case in which the search was not conducted pursuant to a validly issued warrant, the burden shifts to the Government. A search not conducted pursuant to a warrant validly issued by a magistrate is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In such cases, the Government bears the burden of establishing by a preponderance of the evidence why an exemption from the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Van Lewis*, 409 F.Supp. 535, 541 (E.D.Mich.1976).

## III ANALYSIS

■ Defendant has established standing to challenge the search in this case because he has shown that police conducted the relevant search in his own home. *See United States v. Jones*, 147 F.Supp.2d 752, 758–59 (E.D.Mich.2001).

■ Although Defendant's submission is not a model of clarity, between Defendant's brief and Defendant's position at oral argument, the Court understands Defendant to be arguing that the search warrant in this case was based on an affidavit that contained deliberately or recklessly false allegations and that the remaining parts of the affidavit were insufficient to provide the probable cause necessary for a validly-issued warrant. Were this argument correct, the Court would have to suppress the evidence in question. *See*

types of firearms; a dummy round for a light anti-tank weapon; *Guerrilla Warfare*, by Ernesto "Che" Guevara; numerous magazines for ammunition; various steel pipes; gunpowder; wicks; and, several ammunition boxes. Suffice it to say that Defendant seems to have taken to heart a founding father's

admonition that "[t]yrants never feel secure, until they have disarmed the people.... But the people of this country have arms in their hands...." *"The Republican" to the People*, Connecticut Courant (Hartford), Jan. 7, 1788, *reprinted in* 1 *The Debate on the Constitution* 712 (Bernard Bailyn ed.1990).

*United States v. Charles,* 138 F.3d 257, 263 (6th Cir.1998) (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

■ This Court must therefore inquire as to whether (1) Defendant has shown by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) the affidavit, without the false statements, provides the probable cause needed to sustain the warrant. *Id.*

Regarding the first prong of this analysis, Defendant "must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth," and he must "accompany those allegations with an offer of proof." *United States v. Cummins,* 912 F.2d 98, 101 (6th Cir.1990) (internal citation omitted). Defendant has cleared this hurdle by arguing that Detective Delgreco was reckless when, in the affidavit, he implied that the call from Defendant's home had been made at about the time of the bomb threat and by providing the evidence, discussed above, that supports this assertion. The Government concedes that Detective Delgreco erred when he swore to the statements in the affidavit implying that the call from Defendant's home had been made at about the time of the bomb threat, and that absent this false implication, the "remainder of the affidavit would not justify issuance of the warrant." (Pl.Br. at 7.) The Government nonetheless contends that when Detective Delgreco swore to the information in the affidavit, he was "merely negligent, not deliberately false or reckless." The Government further asserts that Detective Delgreco had no motive to behave recklessly because "the time, trouble, and expense of organizing this search 40 miles from his office gave him every incentive to act carefully." (Pl.Br. at 7.)

■ A policeman displays reckless disregard for the truth when he subjectively "entertains serious doubts as to the truth of his allegations." *United States v. Whitley,* 249 F.3d 614, 621 (7th Cir.2001) (citation omitted); *Griffin v. City of Detroit,* No. 92–2062, 1993 WL 239069, at *4 (6th Cir. June 30, 1993). This Court may infer such recklessness "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Whitley,* 249 F.3d at 621; *accord Liptak v. City of Niles,* No. 98–4078, 1999 WL 1045100, at *4 (6th Cir. Nov.10, 1999); *United States v. Tomblin,* 46 F.3d 1369, 1376 (5th Cir. 1995) (Garza, J.).

Here, Detective Delgreco failed to heed obvious reasons to doubt the veracity of the implied allegation that a call came from Defendant's home to the telephone at Carron Industries in temporal proximity to the bomb threat. Three bases support this conclusion. First, Detective Delgreco knew that the relevant time frame was the ten-minute window for which he requested the telephone records. Second, the document provided by Ameritech made crystal clear that a call was placed from Defendant's phone to the pay phone at 1:50 p.m., which was *more than three hours* before the bomb threat. Third, Detective Delgreco had roughly *six days* to notice this discrepancy before he provided his affidavit. Detective Delgreco nonetheless implied to the issuing judge that there was a temporal proximity between the bomb threat and the call from Defendant's home to the pay phone. That allegation was false, and this Court's examination of the evidence leads to the conclusion that the allegation's falsity would have been obvious to anyone who engaged in even a cursory review of the document that Ameritech gave Detective Delgreco.

The Government states that Detective Delgreco "almost inexplicably erred in fail-

ing to realize that Ameritech had reported a telephone call outside the time period of the subpoena," Letter from Robert W. Haviland, Assistant U.S. Attorney, to the Court (July 17, 2001), and the Court agrees with that observation except for the qualifying word "almost." Given Detective Delgreco's ignoring of the readily-apparent reasons to doubt the veracity of his allegation that a call was made from Defendant's telephone to the pay telephone at Carron Industries near the time of the alleged bomb threat, and the lack of any rational explanation for Detective Delgreco's inattentiveness, the Court infers that Detective Delgreco entertained serious doubts as to the veracity of his allegation and thus acted recklessly.

Having concluded that Detective Delgreco's affidavit contained a false allegation made recklessly, the Court must next ascertain whether the affidavit, without the false statement, provides the probable cause needed to sustain the warrant. Because the Government admits that "if the affiant's error were 'set to one side,' the remainder of the affidavit would not justify the issuance of the warrant" (Pl.Br. at 7), the Court answers this question in the negative.

For reasons discussed above, Defendant has proven that the search of his home was not conducted pursuant to a validly-issued warrant. Because the Government has not shown that an exception to the warrant requirement applies, the Court must order the fruits of that search excluded from evidence.

The Court will also observe, although it is not determinative of the outcome of this motion, that police seemed to have been a bit heavy handed in their search of Defendant's residence. The Court notes that federal and state agents began their search of Defendant's house when Defendant was not at home and that they essentially broke into Defendant's house to gain entry. The Court wonders if it might not have been easier on all parties to have entered the house *with* Defendant instead of resorting to more dramatic methods.

## IV CONCLUSION

Because the affidavit underlying the search warrant was predicated on a false allegation made recklessly, and probable cause would not have existed without that false allegation, the Court concludes that the evidence police seized from Defendant's home on September 1, 2001 must be suppressed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress is **GRANTED.**

**SO ORDERED.**

## *ORDER DENYING THE GOVERNMENT'S MOTION FOR RECONSIDERATION*

Before the Court is the Government's motion for reconsideration of this Court's order granting Defendant's motion to suppress, filed on August 10, 2001. Pursuant to Local Rule 7.1(e), the Court concludes that a hearing would not aid in the disposition of this motion. For the reasons set forth below, the Court will deny the Government's motion for reconsideration.

## I BACKGROUND

The facts of this case are as delineated in this Court's order of July 24, 2001 granting Defendant's motion to suppress. As the Government correctly notes in its motion for reconsideration, the Court ordered suppression partly because of its conclusion that "Detective Delgreco had roughly *six days* [between August, 25, 2000 and August 31, 2000] to notice" that the phone records provided by Ameritech

showed that no calls were received at the subject telephone during the ten-minute period for which Detective Delgreco had limited his subpoena. The Court further concluded that Detective Delgreco nonetheless recklessly failed to observe that fact and thus tainted the search warrant that he obtained.

## II  LEGAL STANDARD

■ To succeed on a motion for reconsideration the moving party "must not only demonstrate a palpable defect by which the court and the parties have been misled but also must show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(g)(3). A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest or plain. *See* Blacks Law Dictionary 1110 (6th ed.1990); Webster's New World Dictionary 974 (3rd Ed.1988); Webster's New World Thesaurus 544 (Rev. Ed.1985). "Generally ... the court will not grant motions for ... reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich.—Local Rule 7.1(g)(3).

## III  ANALYSIS

The Government contends that Detective Delgreco had only one day, from August 31, 2000 to September 1, 2000, to inspect the phone records provided by Ameritech. The Government adduces persuasive evidence that was before the Court during its consideration of the motion to suppress to support that conclusion. Thus, the Government argues, the Court clearly erred in concluding that Detective Delgreco had six days, instead of one, to notice that no calls came from Defendant's home to the subject telephone near the time of the alleged bomb threat. Because of that, the Government contends, the Court's order granting the motion to suppress is undermined by a palpable defect that justifies the granting of the Government's motion for reconsideration.

The Government is correct in noting that the Court erroneously concluded that Detective Delgreco had six days, instead of one, to notice the obvious fact that there was no documentary evidence supporting his theory that a phone call came from Defendant's home to the subject telephone near the time of the alleged bomb threat. One day, nonetheless, was ample time for him to observe the patently obvious.

■ As the Court noted in its opinion of July 24, Detective Delgreco "implied to the issuing judge that there was a temporal proximity between the bomb threat and the call from Defendant's home to the pay phone. That allegation was false, and this Court's examination of the evidence leads to the conclusion that the allegation's falsity would have been obvious to anyone who engaged in even a cursory review of the document that Ameritech gave Detective Delgreco." Thus, had the Court correctly concluded that Detective Delgreco had only one day, instead of six, in which to study the telephone records, it still would have held that his failure to note that no calls came from Defendant's home to the subject telephone near the time of the bomb threat constituted recklessness sufficient to undermine the affidavit upon which the search warrant was based. It follows that the Court's erroneous conclusion that Detective Delgreco had six days, instead of one, to scrutinize the telephone records was not a palpable defect, the correction of which would lead to a different disposition of Defendant's motion to suppress.

The Court nonetheless apologizes for its erroneous factual conclusion.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Government's motion for reconsideration of this Court's order granting Defendant's motion to suppress, filed on August 10, 2001, is **DENIED.**

**SO ORDERED.**