**UNITED STATES of America, Plaintiff,**

v.

**Ricky Lee NEWTON, Defendant.**

**No. CR. 02–50002–01.**

United States District Court, E.D. Michigan, Southern Division.

June 28, 2002.

Raymond A. Cassar, Raymond A. Cassar Assoc., Farmington Hills, MI, Federal Defender, Federal Defender Office, Flint, MI, for Ricky Lee Newton, defendant.

Federal Defender, for Timothy David Wilson.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

GADOLA, District Judge.

Before the Court is Defendant Ricky Lee Newton's motion to suppress evidence [docket entry 26]. The Court held a hearing on this motion on June 4, 2002. For the reasons set forth below, the Court shall deny Defendant's motion.

## I. BACKGROUND

Defendant was arrested on January 11, 2002, when federal authorities raided co-defendant Timothy Wilson's property. Agents recovered 194 pounds of marijuana during the raid. A grand jury has indicted Defendant on charges of conspiracy to possess 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and possession of 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Subsequent to Defendant's arrest, the Genesee County Sheriff's Department executed search warrants at four locations. According to the affidavit used to obtain the warrants, Defendant had ties to each of these locations. Each of the four search warrants relied upon the same or a similar affidavit. Following is a summary of the facts recited in the affidavit by Sergeant Terrence Green of the Genesee County Sheriff's Department.

On January 10, 2002, police in Missouri seized 194 pounds of marijuana from an individual named "Romero." (Green Aff. at ¶ 6.) Romero informed authorities that he was transporting the marijuana from McAllen, Texas to Montrose, Michigan, where he was to deliver the marijuana to a person named "Tim." (Green Aff. at ¶ 6.) Romero agreed to make a controlled delivery of the marijuana to Tim, and DEA agents accompanied Romero to Michigan for this purpose. (Green Aff. at ¶ 7.)

On January 11, 2002, Romero directed DEA Special Agent James Halverson to Tim's residence at 10195 Morrish Road, Montrose, Michigan. (Green Aff. at ¶ 8.) Romero informed Special Agent Halverson that since January 2001, he had made approximately 20 deliveries of 100 to 200 pounds of marijuana to Tim at that address, the last one in December, 2001. (Green Aff. at ¶ 8.) Romero informed Special Agent Halverson that during each of the prior deliveries he would drive a vehicle containing marijuana into a detached garage and that Tim would help unload the marijuana from the vehicle. (Green Aff. at ¶ 9.) Romero further stated that on each of these occasions, a person known as "Rick" would arrive at 10195 Morrish Road to take delivery of the marijuana. (Green Aff. at ¶ 9.) In addition, Rick would on some occasions give Romero sums of money ranging from $2,000 to $70,0000 to take back to McAllen, Texas. (Green Aff. at ¶ 9.) Romero stated that Rick had direct contact with the sources of supply in McAllen, Texas. (Green Aff. at ¶ 9.) Rick was described as a white male, 45 to 50 years old, who drove a newer model burgundy pick-up truck. (Green Aff. at ¶ 9.)

A federal search warrant, incorporated by reference in Green's affidavit, was executed at 10195 Morrish Road on January

11, 2002. (Green Aff. at ¶¶ 9–10.) Officers observed Defendant Ricky Newton arrive at 10195 Morrish Road in a white Chevrolet pick-up truck and back the truck into the pole barn located on the property. (Green Aff. at ¶ 10.) Romero then informed one of the officers that Defendant had begun loading marijuana into the bed of the pick-up truck. (Green Aff. at ¶ 10.) At that point, authorities executed the federal search warrant and seized 194 pounds of marijuana from Defendant's vehicle and arrested Defendant. (Green Aff. at ¶ 11.)

The facts connecting Defendant to the residences searched are as follows. First, the affiant relied upon statements made by an unnamed informant on January 15, 2002. (Green Aff. at ¶ 14.) The unnamed informant had been known to a "Captain Compeau" for approximately 5 years. (Green Aff. at ¶ 14.) Captain Compeau had found the unnamed informant reliable, and the informant had never given Captain Compeau any false information. (Green Aff. at ¶ 14.) The informant stated that although Defendant had no income, Defendant was moving to a new home in Forest Township on Dodge Road and had a new motorcycle. (Green Aff. at ¶ 14.) Further, the informant had reason to believe that Defendant was still selling marijuana and that Defendant's son may have been involved in marijuana trafficking. (Green Aff. at ¶¶ 14–15.) The informant added that Defendant had stated that "his last conviction did not hurt him." (Green Aff. at ¶ 14.) Finally, the informant stated that Defendant was storing marijuana and United States currency at any of the residences named in the affidavit. (Green Aff. at ¶ 15.) The affiant and other officers confirmed the address of the Dodge Road home through a search of public records, and conducted surveillance at that address, finding that the information provided by the unnamed source was accurate. (Green Aff. at ¶ 16.)

At the time of Defendant's arrest, DEA Special Agent Halverson recovered a receipt for building supplies in the glove-box of the pick-up truck Defendant was driving. (Green Aff. at ¶ 17.) The receipt was dated January 4, 2002, and the purchaser was Rick Newton, with an address of *8205 East Dodge Road, Forest Township, Michigan.* (Green Aff. at ¶ 17.) In addition, officers found on Defendant's person a receipt for building supplies dated January 11, 2002, made out to Lori Michelle Cool, with an address of 8205 East Dodge Road. (Green Aff. at ¶ 18.)

The pick-up truck that Defendant was driving on the date of the arrest was registered to Lori Michelle Cool of *2307 S. Vassar Road, Davison, Michigan.* (Green Aff. at ¶ 17.) Ms. Cool called Special Agent Halverson on January 14, 2002, and informed him that she was Defendant's fiancee and that she and Defendant had used the seized pick-up truck for hauling building supplies. (Green Aff. at ¶ 20.)

Officers also found on Defendant's person two State Farm Insurance receipts for Defendant with an address of *6220 Fort Street, Birch Run, Bridgeport Township, Michigan.* (Green Aff. at ¶ 18.) Defendant had listed this address with his state probation officer. (Green Aff. at ¶ 21.) Officers also recovered correspondence, including a "vet bill," in Lori Cool's name that listed 6220 Fort Street as the address. (Green Aff. at ¶ 21.)

Upon his arrest, Defendant informed Special Agent Halverson and Task Force Agent Cedric Kendall that he currently resided at *9434 East Vienna Road, Forest Township, Michigan.* (Green Aff. at ¶ 19.) A search of public records confirmed that this address was in the name of Jack Newton, Defendant's father. (Green Aff. at ¶ 19.)

The affiant also noted that Defendant had been convicted of possession with in-

tent to distribute 5 to 45 pounds of marijuana on January 21, 2000, in the Genesee County Circuit Court, and that he was on probation at the time of his arrest on January 11, 2002. (Green Aff. at ¶ 12.) In addition, Defendant and his fiancee, Lori Cool, had been arrested for possession of marijuana in Brown County, Indiana in 1999. (Green Aff. at ¶ 13.)

Finally, the affiant stated that, based upon his training and experience and the information set forth in the affidavit, he believed that evidence of continuing criminal conduct involving drug trafficking would be found at locations where Defendant was known to reside, including 8205 East Dodge Road, Forest Township, Michigan, 2307 S. Vassar Road, Davison, Michigan, 6220 Fort Street, Birch Run, Bridgeport Township, Michigan, and 9434 East Vienna Road, Forest Township, Michigan. (Green Aff. at ¶ 21.)

According to Defendant, officers recovered the following evidence as a result of the four searches. At 8205 East Dodge Road, Forest Township, Michigan, officers recovered a five pound brick of suspected marijuana in a pole barn near the dwelling. At 6220 Fort Street, Birch Run, Michigan, officers recovered a set of scales and a black plastic bag with duct tape. At 9434 East Vienna, Forest Township, Michigan, officers located miscellaneous narcotics paraphernalia. Finally, at 2307 S. Vassar Road, Davison, Michigan, officers recovered "miscellaneous items."

In the present motion, Defendant argues that the Court should suppress the evidence recovered from the four locations because the affidavit in support of the search warrants was not sufficient to create probable cause.

## II. DISCUSSION

### A. LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause is assessed in light of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Probable cause is a "practical, nontechnical conception" that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Id.* at 231, 103 S.Ct. 2317 (quotations omitted).

A reviewing court should not examine de novo the sufficiency of an affidavit supporting a warrant. *Id.* at 236, 103 S.Ct. 2317. Rather, "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis ... for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. 2317 (alteration in original). The reviewing court should pay great deference to a magistrate's probable cause determination and should not set aside a magistrate's finding of probable cause unless it is "arbitrary." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir.1996). In doubtful or marginal cases, the reviewing court should uphold the magistrate's finding. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The rationale for this deference stems from a preference for the search warrant process over warrantless searches. *Id.* at 106–107, 85 S.Ct. 741.

## B. ANALYSIS

A defendant seeking to challenge a search or seizure pursuant to the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *See United States v. Hartwell,* 67 F.Supp.2d 784, 793 (E.D.Mich.1999) (Gadola, J.). At the hearing on this motion, the Court raised this issue *sua sponte, see Thomas v. Ivezaj,* No. 96–1775, 1997 WL 720448, at *2 (6th Cir. Nov.12, 1997), and the Government conceded that Defendant has standing to challenge each of the searches at issue in this case.

In his motion, Defendant makes two general challenges to the affidavit in support of the search warrants. First, Defendant argues that the statements of the unnamed informant in the supporting affidavit used to obtain the search warrants lack any basis in fact and are without any indicia of reliability. Second, Defendant argues that, aside from the statements of the unnamed informant, the affidavit does not provide any information that would create probable cause to believe that evidence of narcotics trafficking would be found at the addresses to be searched.

The Government does not attempt to defend the statements of the unnamed informant. At the hearing on this motion, the Government stipulated that the Court should consider the affidavit as if the statements of the unnamed informant did not appear in the affidavit. The Government argues, however, that even without the statements of the unnamed informant, the affidavit contains "sufficient facts to establish that [Defendant] is a continuing, major marijuana trafficker and that it is reasonable to conclude, based on the experience and training of the affiant, that evidence of drug trafficking will be found where [Defendant] lives, frequents and/or exercises sole or joint dominion and control." (Gov't Resp. at 7.)

The Court agrees with the Government that the affidavit sets forth facts establishing a fair probability that Defendant was involved in narcotics trafficking. As the Government notes, because the controlled delivery of 194 pounds of marijuana occurred as predicted, the state court judge could draw the conclusion that the delivery was intended for Defendant and that such deliveries had occurred at least 20 times in the past. The more problematic question is whether the affidavit sets forth facts that demonstrate a sufficient connection between Defendant and the locations searched.

Excluding the statements of the unnamed informant, the affidavit makes the following connections between Defendant and the addresses searched.

(1) *6220 Fort Street, Birch Run, Bridgeport Township, Michigan:* Officers found on Defendant's person two State Farm Insurance receipts listing this address, and Defendant had listed this address with his state probation officer. Officers also recovered correspondence, including a "vet bill," in the name of Defendant's fiancee, Lori Cool, listing this address.

(2) *9434 East Vienna Road, Forest Township, Michigan:* Defendant informed arresting officers that he currently resided at this address.

(3) *8205 East Dodge Road, Forest Township, Michigan:* At the time of Defendant's arrest, officers recovered from the glove-box of the truck Defendant was driving a receipt for building supplies dated January 4, 2002, bearing Defendant's name and this address. Officers also recovered from Defendant's person a receipt for building supplies dated January 11, 2002, made out to Lori Cool at this address.

(4) *2307 S. Vassar Road, Davison, Michigan:* The pick-up truck that Defen-

dant was driving at the time of his arrest was registered to Lori Cool at this address.

A magistrate "may give considerable weight to 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found,' and is 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir.1993) (citations omitted). In the case of those engaged in dealing drugs, "evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir.1998) (quotation omitted); *see also United States v. Davidson*, 936 F.2d 856, 859–60 (6th Cir.1991) (where defendant's conduct created a fair probability of drug trafficking, probable cause existed to search defendant's residence even though no drug sales had been witnessed there); *United States v. Lamon*, 930 F.2d 1183, 1190 (7th Cir.1991) (concluding that "the specific evidence already seized—along with [the detective's] experience that drug dealers often hide money, drugs, and other incriminating evidence at their permanent residences—provided a substantial basis for a finding of probable cause"); *United States v. Terry*, 911 F.2d 272, 275–76 (9th Cir.1990) (finding that officer's "first hand knowledge of [the defendant's] possession of methamphetamine and his experience with other drug dealers provided the magistrate with 'a reasonable ground to believe' that contraband might be found in [the defendant's] residence").

Based upon the affidavit, three of the four addresses at issue could reasonably be considered Defendant's "residences." Defendant listed 6220 Fort Street with his probation officer and arresting officers recovered insurance receipts bearing Defendant's name and this address. Defendant informed arresting officers that he resided at 9434 East Vienna Road. In addition, arresting officers recovered from the glove-box of the truck Defendant was driving a receipt for building supplies dated January 4, 2002, bearing Defendant's name and an address of 8205 East Dodge Road. Based upon this information, the state court judge could reasonably conclude that Defendant maintained a residence at any or all of these addresses. Because evidence of drug dealing is likely to be found where a drug dealer lives, *see, e.g., Jones*, 159 F.3d at 975, under the totality of the circumstances, the state court judge had a substantial basis for concluding that searches of 6220 Fort Street, 9434 East Vienna Road, and 8205 East Dodge Road would uncover evidence of marijuana trafficking.

■ Defendant's connection to the final address, 2307 S. Vassar Road, is more attenuated. The affidavit notes that the truck Defendant was driving at the time of his arrest was registered to his fiancee, Lori Cool, of 2307 S. Vassar Road. The Government suggests that Defendant and his fiancee shared joint control of 2307 S. Vassar Road because of his fiancee's ties to two of the other addresses linked to Defendant.

Without more, these facts do not support a finding that Defendant resided at or controlled 2307 S. Vassar Road. Thus, under the totality of the circumstances, the Court finds that the state court judge did not have a substantial basis for concluding that evidence of marijuana trafficking would be found at 2307 S. Vassar Road. There is simply a lack of "evidentiary nexus" between this address and criminal activity. *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir.1994).

■ In its response, the Government argues in the alternative that even if the search warrants at issue lack probable cause, suppression is not warranted under

the "good faith" exception established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under *Leon*, if police officers act in objectively reasonable reliance upon a search warrant issued by a detached and neutral magistrate, the fruits of their search will not be excluded even if the search warrant is later found to be invalid. *Id.* at 922–23, 104 S.Ct. 3405. Suppression is still warranted, however, where the officer relies upon "a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405 (quotation omitted). For the reasons set forth below, the Court concludes that the good faith exception applies to the search of 2307 S. Vassar Road. Accordingly, the Court will not suppress the evidence recovered from that address.

The present case presents a scenario similar to that addressed by the Sixth Circuit in *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994). In *Schultz*, the Sixth Circuit found that a warrant to search the defendant's safe deposit boxes was not supported by probable cause, yet the court concluded that the warrant was not so lacking in indicia of probable cause as to fall outside of the good faith exception. *Id.* at 1098. The only connection between the safe deposit boxes and criminal activity was the affiant's statement that, in his experience, individuals involved in drug trafficking often keep their records in safe deposit boxes. *Id.* at 1097. The Court found that "[w]hile an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity." *Id.* (citation omitted). Nevertheless, the court affirmed the district court's denial of the motion to suppress under the good faith exception, noting that the officer "certainly had probable cause to be-

lieve that [the defendant] had committed a crime," and that "the connection [between criminal activity and the safe deposit boxes] was not so remote as to trip on the 'so lacking' hurdle." *Id.* at 1098.

In this case, the affidavit in support of the warrant authorizing a search of 2307 S. Vassar Road was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. As noted above, the affidavit set forth facts that establish a fair probability that Defendant was involved in narcotics trafficking. At the time of his arrest, Defendant was driving a pick-up truck registered to his fiancee at 2307 S. Vassar Road. The Court has already concluded that, because evidence of drug dealing is likely to be found where a drug dealer lives, probable cause existed to search the three locations that reasonably could be considered Defendant's "residences." Although the affidavit does not establish that Defendant "resided" with his fiancee at 2307 S. Vassar Road, the connection between Defendant's alleged narcotics trafficking and this address is not so attenuated as to be outside of the good faith exception. *See Schultz*, 14 F.3d at 1098.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress evidence [docket entry 26] is **DENIED.**

**SO ORDERED.**