**UNITED STATES of America,
Plaintiff,**

v.

**Kenneth Bernard LOCKETT,
Defendant.**

**No. CR. 03–50041.**

United States District Court,
E.D. Michigan,
Southern Division.

June 16, 2004.

David A. Koelzer, Federal Defender Office, Federal Defender, Federal Defender Office (Flint), Flint, MI, for Kenneth Bernard Lockett (1), Defendants.

Michael Andrew Tesner, U.S. Attorney's Office, Flint, MI, for United States of America, Plaintiff.

*OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR REHEARING, (2) VACATING THE COURT'S PRIOR RULING ON DEFENDANT'S MOTION FOR SENTENCING GUIDELINE DETERMINATION, AND (3) GRANTING DEFENDANT'S MOTION FOR SENTENCING GUIDELINE DETERMINATION*

GADOLA, District Judge.

On November 3, 2003, Defendant pled guilty to one count of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). On January 22, 2004, Defendant filed a "motion for sentencing guidelines determination" in which Defendant requested that the Court deny the application of U.S.S.G. § 2K2.1(b)(5) (four-level increase for use of firearm in another felony offense)[1] to this case. The Court held an evidentiary hearing on this motion on May 12, 2004. The Court denied the motion on the record. On June 2, 2004, Defendant filed a motion for rehearing. On June 3, 2004, which was the date set for sentencing, the Court heard arguments on the rehearing motion and determined that an *in camera* review of a videotape presented at the May 12 hearing was necessary. The videotape contained Defendant's post-arrest statement to the police. After a close review of the videotape and upon further consideration of the matter, the Court will grant Defendant's rehearing motion, will vacate its prior ruling denying Defendant's sentencing motion, and will now grant Defendant's sentencing motion.

To succeed on a motion for rehearing "[t]he movant must not only demonstrate a palpable defect by which the

1. U.S.S.G. 2K2.1(b)(5): "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18."

court and the parties have been misled but also must show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest, or plain." *United States v. Cican*, 156 F.Supp.2d 661, 668 (E.D.Mich.2001) (Gadola, J.).

■ The Court's May 12 on-the-record ruling was infected by an obvious, clear, unmistakable, manifest, and plain defect. The Court ruled that Defendant qualified for a four-level increase under U.S.S.G. § 2K2.1(b)(5) because he had committed a felonious assault with his firearm during the events relevant to his pending offense on July 5, 2003. *See* Mich. Comp. Laws § 750.82(a).[2] The matter essentially came down to a credibility contest between two teenage girls, Tiara Thompson and Shamanica Thompson, and Defendant. According to the girls' out-of-court statements (not subject to cross examination) Defendant, at a minimum, pointed his gun in the girls' direction. Defendant, in sharp contrast, told the police on the day he was arrested and testified on the witness stand that he did not point his gun at anybody. This issue is crucial to the U.S.S.G. § 2K2.1(b)(5) determination because, if Defendant pointed the gun at the girls, then he would have committed a felonious assault. *See People v. Davis*, 216 Mich. App. 47, 54, 549 N.W.2d 1, 5 (1996).[3]

At the May 12 hearing, the Court found that Defendant lacked credibility. Defendant testified that another individual had shot at him during the relevant period. At the hearing, this testimony appeared to be inconsistent with Defendant's post-arrest statement to the police. At the hearing, the Court was under the mistaken impression that Defendant never told the police that someone had fired on him during the events in question, and the attorneys for both sides could not recall otherwise. The Court concluded that, if someone had fired on Defendant, then Defendant would have certainly included this information in his statement to the police. The Court found that this apparent omission of information destroyed Defendant's credibility; the Court believed that his testimony was untruthful. This belief was incorrect. The aforementioned videotape of Defendant's statement to the police, which the Court reviewed in chambers, clearly indicates that Defendant told the police in his post-arrest statement that another individual shot at him during the relevant period. Consequently, Defendant's May 12 testimony is consistent with his prior statement to the police, and the May 12 ruling was infected with a palpable defect.

Furthermore, correcting this defect will result in a different disposition of the matter. Contrary to the Court's May 12 ruling, Defendant's credibility is not as lacking as previously thought. On balance, the Court now finds that Defendant's version of the events in question is more accurate that the girls' version.

On the date in question, July 5, 2003, Shamanica Thompson and another girl, Tonya Rogers, told the police that "they saw [Defendant in his car] with a big black gun in his hand and he was pointing across

---

**2.** Mich. Compl. Law § 750.82(1): "[A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both."

**3.** *Davis*, 216 Mich.App. at 54, 549 N.W.2d at 5: "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery."

the car in their direction." Police Rep. at 2. As for Tiara Thompson, she was silent on July 5 on the issue of whether or not Defendant pointed a gun at them. *See id.* Moreover, as will become important below, the girls did not tell the police on July 5 that Defendant shot at them. *See id.* Shamanica Thompson further stated that she believed she heard two shots. *See id.* It is unclear from the Police Report how many shots Tiara Thompson and Tonya Rogers heard. *See id.*

On January 29, 2004, Shamanica Thompson and Tiara Thompson provided a joint affidavit to the Government. In their affidavit, contrary to their initial July 5 statements, the girls claimed that Defendant shot his gun at them. *See* Aff. at 1; Police Rep. at 2. As noted above, there was no claim in their July 5 statements that Defendant shot at them, and Defendant has repeatedly maintained that he only shot his gun up into the air. Similar to the aforementioned reasoning behind the Court's May 12 ruling with respect to the issue of whether another individual fired on Defendant, the absence of any indication in the girls' July 5 statements that Defendant shot at them raises an inconsistency between the July 5 and January 29 statements and calls each statement into question. Further, an additional fact in the police report undermines the girls' claim that Defendant shot at them: on the date in question, the police checked the house by which the girls were standing and the surrounding area for bullet holes and did not find any. *See* Police Rep. at 3. This fact bolsters Defendant's contention that he only shot his gun up into the air and not at anyone or any house. Also, at the hearing, the evidence established that, while Defendant was in the driver's seat and was driving the vehicle away from the house where the girls were located, Defendant held and shot his gun out of the front passenger's side window of the vehicle. The house in question is located on east side of the street, and, at the time of the shot, the vehicle was moving north and was one house north of the house where the girls were located. Thus, to point and/or shoot the gun at the girls, Defendant, while driving north, would have had to reach across the full width of the vehicle, including the front passenger's seat, hold the gun outside the front passenger's side window, and aim and/or shoot the gun in a southeasterly direction, i.e., behind him and to his right. Under these circumstances, it is difficult to believe that Defendant was able to physically reach across the full width of the vehicle and aim and/or shoot backwards at the girls, and the Court finds that it is more likely that, as Defendant maintains, Defendant did not point his gun at anyone or shoot it at anyone. It appears that the girls are, at a minimum, embellishing the truth, and, as such, the Court questions the accuracy of their version of events.

Additionally, in their January 29 affidavit, for the first time, Shamanica Thompson and Tiara Thompson claimed that Defendant shot his gun two times. *See* Aff. at 1. Defendant has consistently stated that he only shot the gun one time. Defendant's position is supported by an additional fact in the police report: when the police located Defendant's gun it contained five live rounds and one spent round. *See* Police Rep. at 1. This fact is a strong indication that Defendant only shot his gun once and, as a result, the girls' January 29 statement is, at best, inaccurate and seriously calls into question the girls' credibility.

It is true that at least Shamanica Thompson stated on July 5 that she believed she heard two shots. *See* Police Rep. at 2. Nevertheless, there is measurable difference between merely hearing two shots, which could have been fired by anyone, and affirmatively stating that Defendant shot his gun two times.

The Court separately notes that this hearing of two shots strengthens Defendant's contention that he was shot at on the date in question. The facts of the case indicate that another individual shot a gun once and Defendant shot a gun once.

The Court is also troubled by another sentence in the girls' January 29 affidavit: "Mr. Lockett did not fire the gun into the air, but he did fire towards our house." This statement that Defendant "did not fire the gun into the air" is absent from the girls' July 5 version of events. This statement fits too perfectly within the Government's theory of events, and, in the Court's opinion, it appears that this statement did not result from the girls' independent recollections. That said, the Court does not believe that this statement resulted from some wrongdoing by the Government. Rather, the Court believes that once the Government located the girls on January 29, the Government, quite naturally, had a preliminary conversation with the girls to make sure the Government located the correct individuals, and, in the course of this conversation, the Government discussed matters related to the events of July 5. Given the nature and wording of the girls' statement that Defendant "did not fire the gun into the air" and given the absence of any similar language in their July 5 statements, it strongly appears that the girls formulated this statement subsequent to the Government's aforementioned preliminary conversation and not from the girls' independent recollections of the events of July 5. This is another reason to question the girls' credibility in this matter.

Furthermore, as indicated above, the girls did not testify on the witness stand and were not subject to cross examination when they gave their statements. While not dispositive, this fact is another reason to question the accuracy of their version of events.

Therefore, on balance, with Defendant's credibility now greater than the girls' credibility and in light of all the evidence presented, the Court concludes that the Government has not met its burden of showing that U.S.S.G. § 2K2.1(b)(5) should apply in this case because the Government has not shown that Defendant committed a felonious assault. *See United States v. Clay*, 346 F.3d 173, 178–79 (6th Cir.2003).

Finally, the Government has also argued for an increase under U.S.S.G. § 2K2.1(b)(5) because Defendant intentionally discharged a firearm from a motor vehicle. *See* Mich. Comp. Laws § 750.234a(1).[4] However, since Defendant merely shot his gun into the air, the Court concludes that, under the facts of this case, Defendant did not fire the gun "in a way that endangered someone else" and, as a consequence, did not commit another felony offense in the form of intentionally discharging a firearm from a motor vehicle. *See People v. Maitre*, No. 243099, 2004 WL 1121868, at *1 (Mich.Ct.App. Jan.15, 2004)[5] (quoting Mich.Crim. Jury Instructions 2d § 11.37). Therefore, the Government has not met its burden of showing that U.S.S.G. § 2K2.1(b)(5) should apply in this case. *See Clay*, 346 F.3d at 178–79.

**ACCORDINGLY, IT IS HEREBY ORDERED** that (1) Defendant's motion for

**4.** Mich. Comp. Laws § 750.234a(1): "[A]n individual who intentionally discharges a firearm from a motor vehicle, a snowmobile, or an off-road vehicle in such a manner as to endanger the safety of another individual is guilty of a felony, punishable by imprisonment for not more than 4 years, or a fine of not more than $2,000.00, or both."

**5.** *Maitre*, 2004 WL 1121868, at *1: "The elements of the offense of intentionally discharging a firearm from a motor vehicle so as to endanger the safety of another requires that the prosecution prove that defendant (1) discharged a firearm, (2) intentionally, (3) from a motor vehicle, and that (4) he did so in a way that endangered someone else."

rehearing, filed on June 2, 2004 [docket entry 18] is GRANTED; (2) the Court's ruling on the record denying Defendant's motion for sentencing guidelines determination on May 12, 2004, is **VACATED**; and (3) Defendant's motion for sentencing guidelines determination, filed on January 22, 2004 [docket entry 11] is **GRANTED**.

**CONSEQUENTLY, IT IS FURTHER ORDERED** that U.S.S.G. § 2K2.1(b)(5) does not apply in this case and the Court's ultimate sentencing determination will not include a four-level increase under U.S.S.G. § 2K2.1(b)(5).

**IT IS FURTHER ORDERED** that sentencing in this case is reset for Thursday, JUNE 24, 2004, at 2:00 p.m.

**SO ORDERED.**