**Naomi COLLINS, Personal Representative of the Estate of Edward Collins, Jr., Deceased, Plaintiff,**

v.

**NATIONAL GENERAL INSURANCE COMPANY, a/k/a GMAC Insurance, Defendant.**

Case No. 10–13344.

United States District Court,
E.D. Michigan,
Southern Division.

July 1, 2011.

Opinion Denying Reconsideration
Sept. 28, 2011.

Opinion Denying Second Motion for
Reconsideration Oct. 24, 2011.

Barry P. Waldman, Brian A. McKenna, Sachs Waldman, Detroit, MI, for Plaintiff.

Michael F. Schmidt, Harvey Kruse, Troy, MI, for Defendant.

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

ROBERT H. CLELAND, District Judge.

Pending before the court are cross-motions for summary judgment filed by Plaintiff Naomi Collins and Defendant National General Insurance Company. Plaintiff initially filed an action for breach of insurance contract in Wayne County Circuit Court, and Defendant timely removed on August 24, 2010. On November 10, 2010, Plaintiff moved for summary judgment, requesting a determination that the vehicle which struck Plaintiff's decedent was an "uninsured motor vehicle" within the terms of the applicable insurance contract. After a stay for proceedings in the Michigan courts, Defendant likewise moved for summary judgment on February 25, 2011, requesting a determination that there was no uninsured motor vehicle by the terms of the insurance contract. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Plaintiff's motion.

## I. BACKGROUND

On July 29, 2009, Edwards Collins, Jr., was riding a motorcycle when he was struck and killed by a car driven by Calvin Smith. Smith was intoxicated at the time of the accident. The vehicle Smith was

attempting to drive was owned by Dorothy Lee Berrien, who had insured it in her name under a policy written by Citizens Insurance Company of the Midwest ("Citizens Policy"). At the time of the accident Plaintiff's decedent was insured under an uninsured motorist policy written by Defendant ("UIM Policy"). (Def. Mot. Ex. 1.) Following the accident, Citizens discovered numerous material misrepresentations by Berrien and rescinded the Citizens Policy entirely and retroactively. (Pl. Mot. Ex. F.) Plaintiff sought personal injury protection benefits from Citizens, which were denied. In a letter dated September 14, 2009, Citizens informed Plaintiff Naomi Collins that it was "denying Personal Injury Protection (PIP) benefits ... because there was no coverage on the date of loss." (Def. Mot. Ex. 7.) Plaintiff also brought suit against Smith and Berrien in Wayne County Circuit Court. Although Citizens defended Plaintiff, it eventually moved for summary disposition and reformation of its policy to provide only the coverage for Plaintiff's claims mandated by statute. *Citizens Ins. Co. v. Jackson,* Case No. 10–007334–CK (Wayne Cnty. Cir. Ct. Jan. 11, 2011); (Def. Mot. Ex. 10). On January 11, 2011, the Wayne County Circuit Court granted Citizens' motion, reforming the Citizens Policy to provide coverage of no more than the minimum required under Michigan law for Plaintiff's claims against Smith and Berrien, pursuant to Mich. Comp. Laws § 257.520(f)(1).

Prior to Citizens' motion in the state-court action, Plaintiff submitted a claim for uninsured motorist coverage benefits from Defendant. Defendant denied coverage under the UIM Policy, asserting that Berrien's vehicle was not uninsured because Michigan law prohibits Citizens from rescinding the minimum required coverage with respect to an innocent third party following injury. Mich. Comp. Laws § 257.520(f)(1). Plaintiff commenced the instant case against Defendant in Wayne County Circuit Court, and Defendant timely removed to this court on August 24, 2010. Both parties moved for summary judgment. Plaintiff contends that Citizens denied coverage, thereby permitting recovery under the uninsured motorist coverage in the UIM Policy. Defendant contends that the January 11, 2011, order of the Wayne County Circuit Court effects coverage of Plaintiff's claims, thereby foreclosing the possibility of recovery under the uninsured motorist coverage. The court must now interpret the terms of the UIM Policy to determine whether the vehicle which struck Plaintiff's decedent was an "uninsured motor vehicle" as defined by the insurance contract between the parties.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir.2003). "Once the moving party has made that showing, the nonmoving party cannot rest on its pleadings, but must identify specific facts that can be established by admissible evidence that demonstrate a genuine issue for trial." *Highland Capital, Inc. v. Franklin Nat. Bank,* 350 F.3d 558, 564 (6th Cir.2003).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan,* 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir.2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment— the disputed factual issue must be material. *See id.* at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted).

## III. DISCUSSION

At their most concise, the parties' cross-motions present only one question: did Citizens deny coverage? The undisputed facts show that Plaintiff's decedent was covered by an uninsured motorist policy written by Defendant, that he was covered by the policy when struck and killed by an intoxicated motorist, that the intoxicated motorist was driving a car insured by Citizens, that Citizens rescinded the policy after the collision, that Citizens initially denied any coverage for liability to Plaintiff, and that Citizens eventually recognized a statutory obligation to cover Plaintiff's claim. From these agreed facts, Plaintiff argues that the initial denial by Citizens effected an irreversible denial of coverage, rendering the uninsured motorist coverage applicable. In contrast, Defendant argues that Citizens' eventual recognition that it was legally obligated to cover Plaintiff's claim vacates the earlier denial, rendering the uninsured motorist coverage inapplicable. The parties' other arguments are wholly without support.

■ Starting with the policy issued to Plaintiff by Defendant, there is no dispute that the policy applied with full effect at the time of the accident. Nor is there a dispute regarding the material facts. Instead, the parties contest the interpretation of the contract terms, which is a question of law to be decided by the court where the terms are unambiguous. *See Citizens Ins. Co. v. Pro–Seal Serv. Group, Inc.*, 477 Mich. 75, 730 N.W.2d 682, 684 (2007); *Rory v. Continental Ins. Co.*, 473 Mich. 457, 703 N.W.2d 23, 28 (2005); *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 663 N.W.2d 447, 451 (2003). Whether the terms are ambiguous is also a question of law for the court. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 596 N.W.2d 915, 918 (1999). The policy at issue included uninsured motorist coverage, the applicability of which is the sole dispute in this case.

■ As uninsured motorist insurance is not required in Michigan, the scope of such insurance must be determined exclusively from the terms of the contract between the parties under general principles of contract law. *Citizens Ins.*, 730 N.W.2d at 685; *Rory*, 703 N.W.2d at 29; *Rohlman v. Hawkeye–Security Ins. Co.*, 442 Mich. 520, 502 N.W.2d 310, 313 (1993). Where the terms of an insurance contract are unambiguous, courts must enforce the terms of the contract as written—neither implying what is absent nor excising what is present. *Rory*, 703 N.W.2d at 26; *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 596 N.W.2d 190, 193–94 (1999). To the furthest extent possible, "courts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 663 N.W.2d 447, 453 (Mich.2003). It is not within the province of the courts to create ambiguity where none exists, nor to "rewrite the agreement of the parties under the guise of interpretation." *In re Estate of Seitz*, 426 Mich. 630, 397 N.W.2d 162, 164–65 (1986) *quoting Vigil v. Badger Mut. Ins. Co.*, 363 Mich. 380, 109 N.W.2d 793, 795 (1961). Undefined terms within a contract are accorded their common meaning. *Bloomfield Estates Improvement Ass'n v. City of Birmingham*, 479 Mich. 206, 737 N.W.2d 670, 675 (2007). Therefore, the court must carefully consider the precise language of the UIM Policy.

Pursuant to the UIM Policy, Defendant agreed to pay Plaintiff "compensatory damages which [Plaintiff] is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' " to Plaintiff's decedent resulting from an accident. (Pl. Mot. Ex. A at Part C, § A.) In relevant part, the crucial term "uninsured motor vehicle" is defined as follows:

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type . . . [t]o which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company . . . denies coverage.

(Pl. Mot. Ex. A at Part C, § C.)

The Citizens Policy unquestionably applied as a bodily injury liability policy at the time of the accident. It is undisputed that Citizens did not rescind the policy until it discovered material misrepresentations in the course of its investigation *following* the accident. (Pl. Mot. Ex. F; Def. Mot. Br. at 3.) Nor is it disputed that the Wayne County Circuit Court order granting summary disposition to Citizens expressly excepted Plaintiff's claim from the voiding, *ab initio*, of the Citizens Policy. *Citizens Ins. Co. v. Jackson*, Case No. 10–007334–CK (Wayne Cnty. Cir. Ct. Jan. 11, 2011); (Def. Mot. Ex. 10, ¶ 3). Specifically, the Circuit Court ordered: "With respect to defendant herein Collins, only, this Court orders pursuant to MCLA 500.3009(1) and MCLA 257.520(g) that the statutory minimum coverage limits of $20,000/40,000 and no more than $20,000 is available in connection with the *Collins v. Smith* lawsuit." *Id.* Plaintiff argues that the later recision and reformation of the Citizens Policy renders it inapplicable at the time of the accident, relying upon *Integon National Insurance Company v. Berry*, Case Nos. 289320, 289366, & 291175, 2010 WL 1138023 (Mich.Ct.App. Mar. 25, 2010), an unpublished opinion of the Michigan Court of Appeals interpreting similar contractual language. Although the *Integon* court found a policy must be enforceable to be applicable, it appears to have completely read the crucial phrase "at the time of the accident" out of the contract. *Id.* at *11. Such an interpretation directly violates the well-established rule in Michigan and elsewhere

that courts must give meaning to all terms in a contract to the extent possible. *See, e.g., Klapp,* 663 N.W.2d at 453; *Wilkie v. Auto–Owners Ins. Co.,* 469 Mich. 41, 664 N.W.2d 776, 781 n. 11 (2003); *Singer v. Goff,* 334 Mich. 163, 54 N.W.2d 290, 292 (1952); *F.H. McClintock Co. v. Truxell Sales & Serv.,* 297 Mich. 284, 297 N.W. 493, 494 (1941); *Plano Mfg. Co. v. Ellis,* 68 Mich. 101, 35 N.W. 841, 843 (1888). In *Integon,* the court found that the failure of the insured to provide notice of the accident and lawsuit to the insurer absolved the insurer of all liability under Mich. Comp. Laws § 257.520(f)(6) and rendered the policy inapplicable. *Integon,* 2010 WL 1138023, at *7, *11. The court went further, however, and decided that the failure to notify the insurer *after the accident* rendered the policy inapplicable *at the time of the accident. Id.* at *11. This court declines to follow that ruling, finding that binding precedent of the Michigan Supreme Court precludes the holding in *Integon. See Uhl v. Komatsu Forklift Co.,* 512 F.3d 294, 302 (6th Cir.2008) (in deciding cases under diversity jurisdiction, federal courts must apply state law).

Turning now to the fundamental dispute between the parties, the court must interpret the undefined term "denies coverage." Plaintiff contends that any refusal—no matter how transient—to pay a claim under a bodily injury liability policy effects a denial of coverage. Under this reading, even a scrivener's error resulting in a letter denying coverage would suffice to permit recovery under the UIM Policy, even if the denial were followed within days by a corrected determination of coverage. Defendant takes the equally untenable position that the UIM Policy covers only those situations where another insurer cannot ever be brought to provide coverage. It contends that any eventual determination of coverage—even if obtained by court order after years of litigation—nec-

essarily forecloses the possibility of the insurer denying coverage.

Fortunately, the facts of the instant case are not as extreme as either position. Citizens clearly refused to cover its policyholders against Plaintiff's claims and repeatedly denied that the Citizens Policy covered Plaintiff's claims. However, Citizens belatedly recognized the statutory obligation to cover personal injury claims brought by innocent strangers to its insurance contract under Mich. Comp. Laws § 257.520(f)(1). Although Citizens fought against coverage throughout the process, it was eventually forced to concede liability for statutorily mandated minimum coverage.

It is useful to consider the counterfactual that should have taken place following the accident. Had Citizens simply reformed the contract to exclude all coverage except for Plaintiff's claims to the extent required by § 257.520(f)(1), the court would have no difficulty in finding for Defendant. Prompt acknowledgment of statutorily-mandated coverage would perfectly comport with the ordinary course of events just as surely as if the Citizens Policy had been valid with bodily injury coverage at the lowest level required by law. Plaintiff would then be unable to pursue a claim under the UIM Policy because the injuring vehicle would have been insured to the extent required by Michigan's Financial Responsibility Act, Mich. Comp. Laws § 257.501, *et seq.* Under the proposed counterfactual, Citizens never denied coverage, nor would there be any other basis in the UIM Policy for uninsured motorist coverage. This is not the case at hand, however, so the earlier denials of Citizens must be accorded due weight.

The above counterfactual clarifies a key point of the contractual basis of the parties' arguments: the eventual reformation

of the Citizens Policy is immaterial to the issue of whether Citizens denied coverage. The UIM Policy contains no express or implied reference to coverage eventually provided by an insurer of a supposedly uninsured motorist, regardless of whether such coverage might be mandated by Michigan law or voluntarily honored by the insurer. Also conspicuously absent from the UIM Policy are any references to the propriety or legal grounds of a denial of coverage. The inclusion or exclusion of modifying terms in a contract is of no small consequence. As Defendant notes, a denial of coverage need not be proper in order to trigger the uninsured motorist policy provisions under the contract as written. (Def. Mot. Br. at 17.) All that is required by the contract drafted by Defendant is that Citizens "denies coverage" with respect to Plaintiff's claims.

■ This court cannot say whether an insurer could in some situations undo its denial of coverage. Such is not the situation in this case. Citizens consistently denied coverage between September 14, 2009, and November 18, 2010. Although Citizens did defend its policyholders against Plaintiff in a related action, Citizens unequivocally denied coverage to Plaintiff. It then filed suit for a declaratory judgment rescinding the Citizens Policy, and only in the alternative did it seek reformation under § 257.520(f)(1). Although an insurer need not accept all claims presented without requiring proof of liability on the part of its insured, the position of Citizens unambiguously denied coverage based upon its rescission of the Citizens Policy. In its letter of September 14, 2009, Citizens informed Plaintiff that it was "denying Personal Injury Protection (PIP) benefits ... because there was no coverage on the date of loss." (Denial Letter, Def. Mot. Ex. 7.) Time passed. On June 24, 2010, Citizens initiated a declaratory judgment action to adjudicate the recision or reformation of the Citizens Policy. More time passed. More than a year after its letter denying any coverage for Plaintiff's claims, on November 18, 2010, Citizens moved for summary disposition to reform the policy to cover only Plaintiff's claims. (Citizens Motion for Summary Disposition, Def. Mot. Ex. 6.) Denial of coverage for more than one year, while taking legal action to avoid all liability for coverage, is inconsistent with Defendant's assertion that Citizens never denied coverage. A denial is a denial, regardless of its legitimacy or finality. The UIM Policy might have required a final denial, a valid denial, or a legally enforceable denial. Instead, it required only a denial. Insurance contracts at their core allocate risks between the parties. The unambiguous and plain language of the policy in this case allocates the risk of an invalid denial of coverage to the insurer.

■ The cases upon which Defendant relies are unpersuasive. Plaintiff's right to recover from Citizens pursuant to § 257.520(f)(1) places her in the same position as though the Citizens Policy were not voidable but Citizens nonetheless denied coverage without cause. The only case applying Michigan law and reasonably on point presented by either party is *Hill v. Wall Street Systems, Inc.,* Case No. 234455, 2003 WL 21224024 (Mich.Ct.App. May 27, 2003). This unpublished opinion does hold that a vehicle cannot be insured and uninsured at once, but the court in that case dealt only with generalities. Abstracting to the general issue of whether the tortfeasor was insured, as done in *Hill,* is inappropriate in this case because the term at issue is unambiguously defined and because its interpretation is the fundamental issue of the case. Where a contract defines a term, the contractual definition of the defined term controls over the

common usage of the term. *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 596 N.W.2d 915, 919–20 (1999); *Group Ins. Co. of Michigan v. Czopek*, 440 Mich. 590, 489 N.W.2d 444, 447 (1992). Whether a vehicle is "uninsured" as the term is colloquially used is irrelevant where the term is defined within the contract. There exists a monetary value of time and a time value of money. Improper nonpayment for some months or years following submission of a valid claim is a risk the parties are free to allocate by contract, *ex ante*. This risk is highly correlated with, but not identical to, the risk of actual lack of insurance. By its unambiguous terms, the UIM Policy allocates the risk that an insurer will improperly deny coverage to Defendant through the definition of "uninsured motor vehicle." Although of little assistance in the instant matter, cases from other jurisdictions interpreting similar contract terms tend to support Plaintiff's position that even a legally unfounded denial of coverage suffices to permit a claim for uninsured motorist coverage. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 196 Ga.App. 755, 397 S.E.2d 127, 128–29 (1990) (contrasting policy provisions "legally denied coverage" and "denies coverage"); *State Farm Mut. Auto. Ins. Co. v. Talley*, 329 So.2d 52, 55–56 (Miss.1976) (quoting treatise on uninsured motorist coverage for the proposition that a denial need not be valid in order for uninsured motorist coverage to apply); *St. Paul Mercury Ins. Co. v. Am. Arbitration Assoc.*, 425 Pa. 548, 229 A.2d 858, 860 (1967) (actual coverage liability immaterial where defined term in contract requires only a denial of coverage).

The reformation of the Citizens Policy ordered by the Wayne County Circuit Court does not alter the foregoing analysis. Regardless of eventual recovery from Citizens, the UIM Policy does not require Plaintiff to litigate a denial of coverage through the courts to a final resolution in a court of final appeal. An uninsured motorist insurance policy could require such action by the insured before presenting a claim to her own insurer, but the policy in this case does not so require. Where an insurer improperly denies coverage, the remedy to Defendant is to pay over benefits to its insured and subrogate the insured's claims against the insurer that has denied coverage. (Pl. Mot. Ex. A at Part F.) Although this court will not speculate on the remedies to Defendant against Citizens, it is not clear that Defendant has no recourse against Citizens for its denial of coverage. The court must decide the case before it, and that case presents the question of whether Citizens denied coverage for any liability of its insured for the accident involving Plaintiff's decedent. Under the unambiguous language of the contract and the undisputed facts presented to the court, Citizens denied coverage. Therefore, the vehicle which struck Plaintiff's decedent was an "uninsured motor vehicle" within the terms of the UIM Policy.

### IV. CONCLUSION

IT IS ORDERED that Plaintiff's motion for summary judgment [Dkt. # 13] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Dkt. # 22] is DENIED.

Finally, IT IS ORDERED that the parties are DIRECTED to submit a proposed judgment approved as to form on or before **July 8, 2011.** If the parties cannot agree upon the form, each is DIRECTED to submit a proposed judgment.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Pending before the court is Defendant National General Insurance Company's

motion for reconsideration. At the direction of the court, Plaintiff Naomi Collins filed a response on August 17, 2011, and Defendant filed a reply on August 31, 2011. Having reviewed the briefs and exhibits, the court concludes no hearing on this motion is necessary. *See* E.D. Mich. LR 7.1(h)(2). For the reasons stated below, the court will deny Defendant's motion.

## I. BACKGROUND

Plaintiff Naomi Collins is the personal representative of the deceased policyholder and insured of Defendant. Prior to the insured's death, he entered a contract with Defendant for an uninsured motorist insurance policy ("National General Policy"). Among other things, the National General Policy provides for insurance coverage in the event of the insured's injury or death caused by another motorist whose insurer "denies coverage" for compensatory damages the insured is "legally entitled to recover from the owner or operator" of the vehicle for which liability insurance coverage at the minimum level required by Michigan law is denied. (Pl. Mot. Ex. A at Part C, § A.) Plaintiff alleges Defendant breached this contract provision. Defendant argues that there was no denial of coverage upon which to base a claim under the National General Policy uninsured motorist provision. Upon cross-motions and briefing by the parties, the court found that there existed just such a denial of coverage. Defendant moved for reconsideration.

On July 29, 2009, the insured was riding a motorcycle when he was struck and killed by a car driven by Calvin Smith, who was intoxicated. The vehicle which struck the insured was owned by Dorothy Lee Berrien, who had insured it in her name under a policy written by Citizens Insurance Company of the Midwest ("Citizens Policy"). However, the policy was obtained through a multitude of false statements, for which reason Citizens eventually rescinded the policy. Plaintiff sought personal injury protection benefits from Citizens. In a letter dated September 14, 2009, Citizens informed Plaintiff Naomi Collins that it was "denying Personal Injury Protection (PIP) benefits ... because there was no coverage on the date of loss." (Def. Mot. Ex. 7.)

Plaintiff brought suit against Smith and Berrien in Wayne County Circuit Court on October 1, 2009. On January 26, 2010, Smith and Berrien tendered an offer of judgment in the amount of the minimum mandatory liability insurance coverage required under Michigan law. (Def. Mot. Recons. Ex. C.) Nothing in the record indicates whether Citizens participated, or agreed to coverage of such offer. Although Citizens defended Smith and Berrien, it eventually commenced a separate declaratory judgment action on June 24, 2010. In that action, Citizens sought a declaration of no liability for any claims under the Citizens Policy, including those arising from Plaintiff's claims against Smith and Berrien. (Def. Mot. Ex. 3.) After summary disposition was denied, Citizens moved for rehearing, and its motion was granted. *Citizens Ins. Co. v. Jackson,* Case No. 10–007334–CK (Wayne Cnty. Cir. Ct. Jan. 11, 2011); (Def. Mot. Ex. 10). The Wayne County Circuit Court reformed the Citizens Policy to provide coverage of no more than the minimum required under Michigan law for Plaintiff's claims against Smith and Berrien, pursuant to Michigan Compiled Laws § 257.520(f)(1).

## II. STANDARD

■ Federal Rule of Civil Procedure 60 permits a court to grant relief from an order for several reasons, including "ex-

cusable neglect" and "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed.R.Civ.P. 60(b). Eastern District of Michigan Local Rule 7.1 provides that a motion for reconsideration shall be granted if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F.Supp.2d 682, 684 (E.D.Mich.2004) (citing *United States v. Cican*, 156 F.Supp.2d 661, 668 (E.D.Mich.2001)). A motion for reconsideration that presents "the same issues ruled upon by the court, either expressly or by reasonable implication," will not be granted. E.D. Mich. LR 7.1(h)(3); *Czajkowski v. Tindall & Assocs., P.C.*, 967 F.Supp. 951, 952 (E.D.Mich.1997).

## III. DISCUSSION

The court begins by acknowledging its use of shorthand phrases describing the somewhat unwieldy interactions among the various parties and nonparties. Defendant correctly notes that Plaintiff had no "claims" against Citizens. Instead, Plaintiff had claims against Smith and Berrien, who had contracted with Citizens for insurance coverage to indemnify against liability arising from claims such as those presented by Plaintiff. Even though Citizens had a direct financial interest in the resolution of Plaintiff's claims against Smith and Berrien, it never rejected any "claims" of Plaintiff. Citizens did, however, reject Plaintiff's assertions that the Citizens policy *covered* Plaintiff's claims against Smith and Berrien. This

rejection of assertions of contractual obligations between nonparties Citizens, Smith, and Berrien in the event of the existence of liability was condensed by the court to a rejection of "Plaintiff's claims" by Citizens.

Although somewhat confusing, this terminology rests on a foundation of analysis recognizing that Plaintiff sought eventual indemnification of the tort liability of Smith and Berrien by Citizens, reasonably expecting that a judgment may be uncollectible from the named individuals. Equivocal language at places, without more, does not demonstrate a palpable defect because correcting it would not "result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3).

The next defect suggested by Defendant does have some merit as a possible basis for the instant motion for reconsideration: the factual assertion that Citizens had offered to settle the case for $20,000 shortly after Plaintiff brought suit. (Def. Mot. Recons. Ex. C.) Plaintiff notes, and the court agrees, that a motion for reconsideration is not a second bite at the apple, nor an opportunity to present evidence or arguments that could have been presented in the party's original briefing. *American Marietta Corp. v. Essroc Cement Corp.*, 59 Fed.Appx. 668, 672 (6th Cir.2003); *United States v. A.F.F.*, 144 F.Supp.2d 809, 811 (E.D.Mich.2001). Analogous to Federal Rule of Civil Procedure 59, motions for reconsideration under Local Rule 7.1(h) "are aimed at *re* consideration, not initial consideration." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998). Defendant could have presented the evidence of the offer when it originally moved for judgment, but for some reason did not do so.[1] Defendant

---

1. In its reply brief, Defendant stated that it "only learned of the offer of judgment recent-

ly." (Reply 3.) This contention, however, is undercut by exhibit 9 of Defendant's motion

could also have presented the evidence in its response and reply; again, it did not. Instead, Defendant chose not to present the only evidence supporting its bald assertions that Citizens never denied coverage. However, there does exist a one-line reference to the offer of judgment, without further detail, in the docket sheet of *Collins v. Smith*, Case No. 09–024063–NI (Wayne County Cir. Ct.). (Def. Resp. Ex. 9 at 3.) As the evidence does not rise to the level of showing a palpable defect, the court will consider this as new evidence without deciding whether it is properly presented on a motion for reconsideration. The court will further note that the proffered evidence would, at most, support only a finding of a genuine issue of material fact; it could not suffice to support summary judgment for Defendant.

■■■ Turning to the merit of Defendant's argument, the court finds it insufficient to grant reconsideration. An offer of judgment by Smith and Berrien alone for an amount that may be below the amount recoverable from Smith, Berrien, and Citizens through liability insurance coverage is not conclusive. Indeed, nothing on the face of the offer indicates that Citizens would have agreed to coverage of the judgment if accepted by Plaintiff. Simply because Citizens may have retained counsel to defend Smith and Berrien does not indicate that it would consent to pay the offered judgment. In fact, Citizens shortly thereafter sought a declaration of no liability, arguing only in the alternative for the statutorily required minimum coverage requirement. Therefore, this additional evidence fails to show a "palpable defect," even if considered as properly presented upon a motion for reconsideration.

Defendant's next arguments that rescinding the Citizens Policy alone did not deny coverage and that Plaintiff manipulated the underlying state court case to create an uninsured motorist both fail to establish grounds for reconsideration. These arguments present nothing more than a recitation of previously made arguments the court found unpersuasive. As noted above, Defendant's additional evidence is not as conclusive as it seems to Defendant. Nor does the court find some bar to recovery in Plaintiff's actions in state court to attempt to obtain more than the statutory minimum coverage from Citizens. Plaintiff's argument that Citizens could not reform its policy was no less sustainable than Citizens' argument for complete release from liability, including liability to Plaintiff for the statutory minimum coverage under Michigan Compiled Laws § 257.520(f)(1). These arguments have already been rejected by the court.

Defendant's argument that Plaintiff seeks to enjoy underinsured motorist insurance without having contracted for such coverage was likewise considered and rejected. Although the court would have been more clear using the abbreviation "UM" rather than "UIM" for Defendant's uninsured motorist policy, the term was defined in the order. Contrary to Defendant's assertion, this insertion of a letter does not "belie[ ] a deeper issue." (Def. Mot. Recons. 16.) The court's opinion recognized that only uninsured motorist insurance was purchased by Plaintiff, and the court adhered rigorously to the language chosen by Defendant in its own contract. The court considered, and re-

for summary judgment, the "Register of Actions" in *Collins v. Smith*, Case No. 09–024063–NI (Wayne County Cir. Ct.). Listed in the exhibit is a January 26, 2010, entry entitled "Offer of Judgment, Filed." Defen-

dant must be presumed to have analyzed its exhibits before filing its motion for summary judgment. The court rejects the suggestion that Citizens did not know of the offer of judgment at the time the exhibit was filed.

jected, the argument that a vehicle cannot be insured and uninsured simultaneously, stating:

> Where a contract defines a term, the contractual definition of the defined term controls over the common usage of the term. *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel,* [460 Mich. 558], 596 N.W.2d 915, 919–20 (Mich.1999); *Group Ins. Co. of Michigan v. Czopek,* [440 Mich. 590], 489 N.W.2d 444, 447 (Mich.1992). Whether a vehicle is "uninsured" as the term is colloquially used is irrelevant where the term is defined within the contract.

(7/1/2011 Order at 638–39.) Defendant must abide by the unambiguous terms of its contract. Just as the court's idiosyncratic but clear definition of "UIM Policy" controls the meaning of the court's prior order, so too the definition of an "uninsured motor vehicle" in Defendant's contract prevails over what might be more common usage of the term. A vehicle can indeed be both insured and uninsured at once. The apparent contradiction may seem to describe a sort of Schrödinger's insurance coverage, but the court lacks authority to redefine the unambiguous terms of a valid contract. *Rory v. Continental Ins. Co.,* 473 Mich. 457, 703 N.W.2d 23, 30–31 (2005).

For similar reasons, the court's previous order does not contain a palpable defect in its interpretation of the term "denies coverage." Because the National General Policy does not define when an insurer "denies coverage," the court sought out its common usage. Although the court did not expressly define the term, Defendant's definition will suffice. To "deny coverage" is "to refuse to recognize or acknowledge [coverage]; disavow [coverage]; repudiate [coverage]." (Def. Mot. Recons. 17.) The court has already addressed the issue of whether Citizens denied coverage. Although immediate payment is not necessary, Citizens denied it was obligated to provide coverage to Plaintiff for any liability of the nonparty tortfeasors in the state court case. It refused to acknowledge its potential liability as indemnitor of its insured. It disavowed and repudiated coverage at the statutory minimum level, going beyond simply defending with a reservation of rights. Defendant asserts that Citizens could not deny coverage until Plaintiff had established the liability of the nonparty tortfeasors. However, Defendant's own argument would prevent Citizens from ever denying coverage to Plaintiff because its insurance contract is with its insured. This would not change simply because Plaintiff obtained a judgment against the insured. It is only "coverage," not a specific "claim" which Citizens "denied." However, Citizens did deny "coverage" of Plaintiff's claims against Smith and Berrien, which is to say that it denied the applicability of its insurance contract to Plaintiff's claims.

Because the court interprets the phrase "denies coverage" to include the actions of Citizens, the court's prior order does not introduce a new clause into the National General Policy. Nor does the order limit the effect of the provision of uninsured motorist coverage where the tortfeasor is insured below the minimum limits established by law. Motor vehicles freely cross state boundaries, and may be subject to minimum insurance requirements of the states in which they are registered. As the states may differ in the minimum level of liability coverage required, this clause is not rendered nugatory by the court's order.

None of Defendant's arguments demonstrate the existence of a "palpable defect" in the court's previous order. Defendant simply clarifies its position that no denial

of coverage can exist until an adjudication of liability of the uninsured motorist. This is not required by the plain language of the National General Policy, and the court may not rewrite the language to impose such a savings clause for the benefit of either contracting party. Therefore, the court will deny Defendant's motion for reconsideration.

## IV. CONCLUSION

IT IS ORDERED that Defendant's motion for reconsideration [Dkt. # 28] is DENIED.

**OPINION AND ORDER DENYING DEFENDANT'S SECOND MOTION FOR RECONSIDERATION AND DENYING AS MOOT DEFENDANT'S "MOTION FOR CONTEMPT"**

Pending before the court are two motions filed by Defendant National General Insurance Company: (1) a second motion for reconsideration; and (2) a motion to hold Citizens Insurance Company of the Midwest ("Citizens"), a nonparty, in contempt of court for failing to comply with a subpoena. On October 13, 2011, Citizens filed a response to Defendant's contempt motion. Having considered the briefs and exhibits, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2), (h)(2). For the reasons stated below, the court will deny both motions.

## I. BACKGROUND

Below is a brief summary of the facts as set forth in the court's previous order denying Defendant's first motion for reconsideration:

Plaintiff Naomi Collins is the personal representative of the deceased policyholder and insured of Defendant. Prior to the insured's death, he entered a contract with Defendant for an uninsured motorist insurance policy ("National General Policy"). Among other things, the National General Policy provides for insurance coverage in the event of the insured's injury or death caused by another motorist whose insurer "denies coverage" for compensatory damages the insured is "legally entitled to recover from the owner or operator" of the vehicle for which liability insurance coverage at the minimum level required by Michigan law is denied. Plaintiff alleged Defendant breached this contract provision. Defendant argued that there was no denial of coverage upon which to base a claim under the National General Policy uninsured motorist provision. On July 1, 2011, the court granted summary judgment in favor of Plaintiff, and Defendant filed a motion for reconsideration on July 15, 2011. At the direction of the court, Plaintiff filed a response on August 17, 2011. The court denied Defendant's first motion for reconsideration on September 28, 2011, and now before the court is Defendant's second motion for reconsideration.

On July 29, 2009, the insured was riding a motorcycle when he was struck and killed by a car driven by Calvin Smith, who was intoxicated. The vehicle which struck the insured was owned by Dorothy Lee Berrien, who had insured it in her name under a policy written by Citizens. However, the policy was obtained through a multitude of false statements, for which reason Citizens eventually rescinded the policy. Plaintiff sought personal injury protection benefits from Citizens. In a letter dated September 14, 2009, Citizens informed Plaintiff Naomi Collins that it was "denying Personal Injury Protection (PIP) benefits ... because there was no coverage on the date of loss."

Plaintiff brought suit against Smith and Berrien in Wayne County Circuit Court on October 1, 2009. *Collins v. Smith,* Case

No. 09–024063–NI (Wayne Cnty. Cir. Ct.) On January 26, 2010, Smith and Berrien tendered an offer of judgment in the amount of the minimum mandatory liability insurance coverage required under Michigan law. Nothing indicates whether Citizens agreed to coverage of such offer. Although Citizens defended Smith and Berrien, it eventually commenced a separate declaratory judgment action on June 24, 2010. In that action, Citizens sought a declaration of no liability for any claims under the Citizens Policy, including those arising from Plaintiff's claims against Smith and Berrien. After summary disposition was denied, Citizens moved for rehearing, and its motion was granted. *Citizens Ins. Co. v. Jackson,* Case No. 10–007334–CK (Wayne Cnty. Cir. Ct. Jan. 11, 2011). The Wayne County Circuit Court reformed the Citizens Policy to provide coverage of no more than the minimum required under Michigan law for Plaintiff's claims against Smith and Berrien, pursuant to Michigan Compiled Laws § 257.520(f)(1).

## II. STANDARD

Federal Rule of Civil Procedure 60 permits a court to grant relief from an order for several reasons, including "excusable neglect" and "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed.R.Civ.P. 60(b). Eastern District of Michigan Local Rule 7.1 provides that a motion for reconsideration shall be granted if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett,* 328 F.Supp.2d 682, 684 (E.D.Mich.2004) (citing *United*

*States v. Cican,* 156 F.Supp.2d 661, 668 (E.D.Mich.2001)). A motion for reconsideration that presents "the same issues ruled upon by the court, either expressly or by reasonable implication," will not be granted. E.D. Mich. LR 7.1(h)(3); *Czajkowski v. Tindall & Assocs., P.C.,* 967 F.Supp. 951, 952 (E.D.Mich.1997).

## III. DISCUSSION

Defendant's second motion for reconsideration presents "the same issues ruled upon by the court" in the order denying Defendant's first motion for reconsideration. E.D. Mich. LR 7.1(h)(3). Defendant fails to present any new grounds for reconsideration, but challenges the court's holding that Defendant's argument regarding the offer of judgment in *Collins v. Smith,* Case No. 09–024063–NI (Wayne Cnty. Cir. Ct.), was not sufficient to rise to the level of showing a "palpable defect." In the September 28, 2011 order, the court alluded to two independent flaws in Defendant's offer of judgment evidence: (1) Defendant failed to timely present the offer of judgment as evidence that Citizens provided coverage to Plaintiff; and (2) even assuming, *arguendo,* that the offer of judgment was properly before the court on a motion for reconsideration, the evidence did not rise to the level of showing a "palpable defect." Defendant challenges each of these flaws, arguing that the evidence was properly presented on a motion for reconsideration, and alleging that the court admitted that the offer of judgment created a genuine issue of material fact.

### A. Timeliness of Presentation of Offer of Judgment Evidence

Throughout the litigation process, Defendant has been less than fully consistent concerning its discovery of the offer of judgment. In its reply brief to the first motion for reconsideration, filed on August

31, 2011, Defendant averred that it "only learned of the offer of judgment recently." The court rejected this statement, noting that exhibit nine of Defendant's motion for summary judgment, which was filed on February 25, 2011, contained an entry entitled "Offer of Judgment, Filed." The court concluded that Defendant must be presumed to have reviewed its own exhibits before filing the motion for summary judgment, and therefore, Defendant had knowledge of the offer of judgment in February 2011. (09/28/2011 Order at 641–42 n. 1.) In its current motion Defendant has thrown two other arguments at the wall. It asserts that it either presented the offer of judgment as evidence supporting its motion for summary judgment, or alternatively that the offer of judgment is new evidence properly before the court on a motion for reconsideration. Neither argument sticks.

Contrary to Defendant's argument, Defendant did not proffer the offer of judgment as evidence that Citizens provided coverage to Plaintiff until its first motion for reconsideration. Defendant asserts that simply because it attached the "Register of Actions" in *Collins v. Smith*, Case No. 09–024063–NI (Wayne Cnty. Cir. Ct.), as an exhibit to its motion for summary judgment, the offer of judgment was evidence before the court on summary judgment proving that Citizens provided coverage to Plaintiff. (Def.'s Second Mot. Recons. at 6.) The "Register of Actions" did contain a generic text entry entitled "Offer of Judgment, Filed," but Defendant did not aver in its motion for summary judgment that the offer of judgment listed in the "Register of Actions" was made by Citizens. Indeed, Defendant did not even mention the offer of judgment in the "Register of Actions" before filing its motion for reconsideration. Because Defendant never presented the offer of judgment as evidence supporting a finding that

Citizens provided Plaintiff coverage in its motion for summary judgment, the court concludes that the evidence was not presented in Defendant's motion for summary judgment.

Further, the offer of judgment was not "newly discovered" evidence properly before the court on a motion for reconsideration. In denying Defendant's first motion for reconsideration, the court acknowledged the untimeliness of Defendant's offer of judgment evidence, but merely assumed, *arguendo*, that the offer of judgment was newly discovered evidence properly presented on a motion for reconsideration. Defendant now argues that the evidence was in fact newly discovered, and thus, properly before the court on reconsideration. After reviewing Defendant's brief, the court now concludes that the evidence was not properly presented on a motion for reconsideration.

■ "[A] motion for reconsideration is not an appropriate vehicle for raising new facts or arguments." *United States v. A.F.F.*, 144 F.Supp.2d 809, 811 (citing *Salopek v. Comm'r of Internal Revenue*, No. 99–9012, 2000 WL 350263, at *2 (10th Cir. Apr. 5, 2000)). Like motions pursuant to Federal Rule of Civil Procedure 59, motions under Local Rule 7.1(h) "are aimed at *re* consideration, not initial consideration." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992)). Here, Defendant had ample time and opportunity to discover and proffer the facts underlying the offer of judgment to the court, having had knowledge of the existence of the offer of judgment since at least February 2011. However, Defendant failed to present the offer of judgment argument in its original motion for sum-

mary judgment filed on February 25, 2011. It again failed to present the argument in its reply to Plaintiff's response to Defendant's motion for summary judgment filed on April 4, 2011. Defendant, whether as a result of strategy or neglect, waited to assert the argument until it filed its first motion for reconsideration, and then unconvincingly asserted that it had "only learned of the offer of judgment recently."

Following the court's denial of the first motion for reconsideration, Defendant argues for the first time that it "presented the information it could gather to the Court at the first opportunity," and has attempted to discover the facts underlying the offer of judgment but Citizens has been uncooperative. (Def.'s Second Mot. Recons. at 5.) To support its claim, Defendant now proffers evidence that it issued a subpoena to Citizens on September 6, 2011, seeking the production of documents and a deposition of a Citizens representative familiar with the underlying state court case. (*Id.* at 4.) According to Defendant, Citizens failed to comply with the subpoena, and Defendant, simultaneously with its second motion for reconsideration, filed a motion asking the court to hold Citizens in contempt. (*See* Def.'s Mot. To Hold Citizens in Contempt.)

Defendant's argument that it presented the offer of judgment to the court at the "first opportunity" is not true. Despite having knowledge of the offer in February 2011, Defendant did not raise the issue until its motion for reconsideration, and in the interim filed numerous motions and briefs without ever raising the offer of judgment as a relevant issue. Additionally, the court finds Defendant's assertion that it diligently attempted to discover the facts underlying the offer of judgment unpersuasive. Defendant's first documented attempt—the subpoena served on Citizens in September 2011—to discover the facts

related to the offer of judgment came more than seven months after Defendant filed its motion for summary judgment, more than two months after the court granted Plaintiff summary judgment, and more than one month after Defendant filed its first motion for reconsideration. Thus, the evidence was not newly discovered, and is not properly presented on a motion for reconsideration.

**B. Offer of Judgment Did Not Create a "Palpable Defect" in the Court's September 28, 2011 Order**

Defendant also argues that the court purportedly admitted that the offer of judgment created a genuine issue of material fact, and therefore, Plaintiff was not entitled to summary judgment. In the September 28, 2011 order, the court observed that the offer of judgment "would, at most, support only a finding of a genuine issue of material fact; it could not suffice to support summary judgment for Defendant." (09/28/2011 Order at 642.) Defendant mistakes this observation for a finding by the court that the offer of judgment created a genuine issue of material fact. The purpose of the court's statement, however, was only to frame the issue presented in Defendant's first motion for reconsideration.

The July 1, 2011 order challenged by Defendant ruled on two separate motions for summary judgment; the court granted Plaintiff's motion and denied Defendant's. Because Defendant challenged both rulings, the court placed Defendant's motion in the proper context. Specifically, the court stated that it would consider whether the evidence, if it had been properly presented, could have created a genuine issue of material fact sufficient to withstand Plaintiff's motion. The evidence, paltry as it was, could not support a grant of summary judgment in favor of Defendant. In other words, the challenged language did

not purport to actually find a genuine issue of fact, but framed the issue as applying to Plaintiff's motion rather than Defendant's. This should be plainly evident from the subsequent paragraphs which proceeded to analyze that issue. If the challenged language had, as the Defendant suggests, actually been a finding, the court would not have continued to discuss the issue and find that no "palpable defect" had been identified.

The court found that the offer of judgment, on its face, did not indicate that Citizens would agree to coverage of the judgment if accepted by Plaintiff because Citizens, shortly thereafter, sought a declaration of no liability. (*See* 09/28/2011 Order at 642.) The evidence presented by Defendant in its first motion for reconsideration was that Smith and Berrien made an offer of judgment in the underlying state court case. Even if the court were aware of the offer of judgment at the time Defendant filed its motion for summary judgment, the one-line, generic notation simply indicating that an offer of judgment was filed in the case against Smith and Berrien, not Citizens, did not create a material issue of fact. Because Defendant merely speculated, without offering any supporting evidence, that Citizens made the offer of judgment, the court concluded that the evidence, even if it had been properly presented, failed to show a "palpable defect."

## IV. CONCLUSION

Defendant has not established that a "palpable defect" exists in the court's September 28, 2011 order, and thus, the court will deny Defendant's second motion for reconsideration. The court will also deny as moot Defendant's motion to hold Citizens in contempt. Accordingly,

IT IS ORDERED that Defendant's second motion for reconsideration [Dkt. # 35] is DENIED.

IT IS FURTHER ORDERED that Defendant's "Motion for Contempt" [Dkt. # 34] is DENIED AS MOOT.